(33 South. 372.)

No. 14,194.

STATE ex rel. AUCOIN v. BOARD OF POLICE COM'RS.*

(Dec. 1, 1902.)

POLICE OFFICER—DISMISSAL.

1. The dismissal of an officer of the police force of the city of New Orleans by the board of police commissioners on a charge preferred against him by a vote unaccompanied or preceded by a finding of guilty on the part of the party charged is illegal. The vote should be set aside, the officer reinstated, and matters replaced in the situation they were just before the vote was taken.

2. This case differentiated from that of State ex rel. McCabe v. Police Board of City of New Orleans, reported in 31 South. 662, 107 La. 165.

(Syllabus by the Court.)

Appeal from civil district court, parish of Orleans; Fred D. King, Judge.

Application by the state, on the relation of J. C. Aucoin, for a mandamus to the board of police commissioners. Writ denied, and plaintiff appeals. Reversed.

E. A. O'Sullivan, for appellant. Arthur McGuirk, Asst. City Atty., for appellee.

Statement of the Case.

NICHOLLS, C. J. Appellant applied on the 9th of March, 1901, to the civil district court for a mandamus directed to the board of police commissioners, commanding it to grant him a new trial, or to show cause why the trial and sentence dismissing him from the police should not be set aside, as having been conducted contrary to all the forms of

*Rehearing denied January 19, 1903.

law, and unjustified by the facts; that it be ordered to answer, and, after due proceedings had, there be judgment annulling and avoiding the trial and sentence passed on the 3d of October, 1900, dismissing him from the police force; and that the board be ordered to give him a new trial, and to proceed therewith under the forms of law; and for all such orders and decrees necessary in the premises, and for all and general relief.

The court ordered that an alternative writ of mandamus issue as prayed for to the board to grant a new trial to the relator, or to show cause, if any it had, why the same should not be granted.

The board, annexing to its answer a transcript of all the proceedings, documentary evidence, and judgment in the matter of the board against Jules C. Aucoin, the relator, averred that the transcript did not contain copies of the oral testimony given by the witnesses in said case, for the reason that the oral testimony of witnesses in trials before said board was never reduced to writing. It showed for cause: That on the 8th of August, 1900, the relator was called for trial on the written charge with specifications set out. That, relator being absent, the trial of the charge was continued. That on September 28, 1900, relator was again called for trial at a regular session of the board, and pleaded not guilty. That the plea was recorded, and the trial proceeded without objection on his part. That witnesses were called on the part of the prosecution, and cross-examined by the defense; whereupon the case was continued to October 3, 1900, when the trial of relator was proceeded with, relator renewing his plea of not guilty.

That during the course of the testimony given by certain (named) witnesses on the part of the prosecution testimony given by them before the investigating committee was heard at the request of the chairman, and the chair called the attention of the superintendent of police to the difference between their statements made on the trial of relator.

That the relator filed in evidence a written statement concerning the length of his service on the police board, and was then sworn and examined on his own behalf. That, after having heard all the evidence on the part of both the prosecution and defense, the case

was closed, and considered by the board, which took the following action:

"Moved, that Sergeant Jules C. Aucoin be dismissed from the force.

"Ayes, Chapman, McGraw, Neinaber.

"Nays, McCloskey, Hymel, Bishop. Absent, Capdevielle, Demoruelle. Tie vote. The chairman, P. A. Capdau, votes aye, and declared the motion to dismiss Sergeant Jules C. Aucoin from the force carried."

That said Aucoin thereafter, on the 24th of October, 1900, filed a petition for a new trial, which petition, after due consideration, was received, discussed, and laid over for further action.

That on the 7th of November, 1900, the board took up the petition for a new trial, and after due consideration thereof declined to grant the same. That at a subsequent session of the board, held on November 28, 1900, relator, through his counsel, E. A. O'Sullivan, sent in a communication to the board notifying it of his intention to appeal to the courts for redress, which communication was received. That at the date of the trial and dismissal from the police board, to wit, the 24th of October, 1900, there was in force for the government of said police board a rule duly adopted on the 22d of June, 1898, reading as follows:

"That from and after this date no application for a new trial shall be considered unless made at the first, or not later than the second, regular meeting after dismissal."

That the board did consider the petition of Aucoin for a new trial, and, exercising the discretion vested in it by law, declined to entertain the same; and the board, under the law and its rule, having exercised its discretion, was without right or authority to grant any new trial in said case, and the court was without jurisdiction or right to issue its order directing the board to grant a new trial to relator in violation of the laws and the rules governing the board and the discretion vested in it by law.

That the acts, doings, and proceedings of the board in said case were constitutional, legal, and proper.

That relator cannot be heard to charge or complain that any person who was a member of the board at the time of said trial was biased or prejudiced against him, or was guilty of any improper conduct or vio-

lation of his official duty; and the court was incompetent to consider or determine such questions, the law providing a remedy for malfeasance in office. That it was the right and duty of the board, at the date of relator's trial, to punish witnesses for contempt, or to call the attention of the law officers of the state to perjuries· committed by them. That relator cannot be heard to prove that .witnesses who were sworn to tell the truth, and nothing but the truth, made false statements under oath, or suppressed the truth through fear of prosecution or punishment for contempt. That, if relator could be heard to propound such proof, its effect would be utterly to discredit and destroy the effect of the testimony of any such witness.

That relator was dismissed after a full, complete, and deliberate trial of the charge preferred against him, a charge averred by rule 35 of the manual of the city police, which said rule was adopted under the authority of sections 1 and 6 of Act No. 63 of 1888, creating a police board for the city of New Orleans, and defining its powers. That all of the proceedings had in relator's case were had without objection or exception on his part, and that relator cannot be heard to set up his ignorance of the law and the rules of procedure of the board, but, on the contrary, as an officer of the police force of the city of 30 years' standing, it was his duty to know the rules of the body of which he formed a part.

That the trial and proceedings against relator were legally and properly conducted, and respondent denied that he was wrongfully or unjustly dismissed from the force, and, respondent having already acted upon and decided the matter in controversy, the court was without jurisdiction or authority to control or review its action in the premises. That it was not the legal duty of respondent to take any other action in relator's case, and no such duty could be imposed upon it by the writ of mandamus. Respondent ˙declared that relator's petition disclosed no cause of action, and prayed that the order for the alternative writ of mandamus be set aside, and the suit dismissed.

The district court, after hearing evidence, rendered judgment rescinding the alternative writ of mandamus, refusing relator's prayer

for a mandamus, and rejecting his demand, with costs. On application of relator, he was granted a devolutive appeal from the judgment.

### Opinion.

In the reasons assigned by the district judge for his judgment he stated that he had inquired into the charge preferred against him in so far as to ascertain whether it was in violation of the rules adopted by the board, and the evidence established that the act charged was in violation of a rule of the board adopted by it under authority of Act No. 63 of 1888.

That the board therefore had the right to try relator on the charge, and, if they considered the evidence proved him guilty, to inflict the penalty, and dismiss him from the force. That the court was authorized to inquire whether or not relator had had a legal trial before the board. The court held that the board had the right to punish witnesses for contempt, and to call the attention of the law officers of the state to perjury committed before them during the trial of an officer. That their act in so doing was not subject to review in the matter then before it in order to ascertain whether they acted from a sense of duty or for the illegal purpose of intimidating relator's witnesses. That, if they had been guilty of any improper conduct, they could be held accountable to the law in another proceeding. That the provision of the statute which required conviction before sentence meant nothing more than that the party on trial should be found guilty before sentence could be pronounced against him. That there must be a finding by the board upon the guilt of the accused, but it was not necessary that the finding should be formally and separately recorded on the minutes. That it was sufficient if it appeared from the minutes and the proceedings that the sentence was arrived at after a full trial and a finding by the commissioners that the accused was guilty as charged. That the minutes of the board and the evidence in the case proved that the sentence was based upon the finding by the board that relator was guilty as charged.

The grounds urged by relator's counsel in this court are:

(1) That two witnesses were called by the board to testify against relator; that the evidence showed that their testimony on the trial was favorable to the accused; that the chair caused a statement made previously by them to be read, and, finding it different from their sworn testimony, ordered the chief to arrest them; that the chief complied, "took them out of the room, and placed them under arrest."

(2) That relator was not convicted of any offense.

In respect to the first point he says that "there were other witnesses to be examined after the action referred to had been taken by the chair, and the effect of this upon those who were favorable to the accused can well be appreciated."

Touching the second point the counsel say: "It will be admitted that before sentence a conviction must be reached; that is, a verdict of guilty of some offense. A conviction necessarily implies a verdict of guilty. If there is no verdict, there is neither an acquittal nor a conviction."

The rules of the department under which this trial was had appreciate the value of these terms, and advisedly used them:

"Rule 23. All charges * * * shall on conviction thereof * * *."

"Rule 28. The verdict in all cases shall be arrived at by calling the roll and the vote of each commissioner shall be duly recorded in the minute book."

"Rule 30. Whenever charges shall be preferred against any officer who has been convicted, * * * shall state the fact of such prior conviction."

"Rule 35. Any member of the police force may be punished in the discretion of the board either by reprimand, suspension from duty and pay for a specified time, reduction, forfeiture, and withholding pay, for any one offense, or by dismissal from the force on conviction of either of the following charges."

From which it is evident that before sentence there must be a conviction of guilty. It was necessary that the verdict either of guilt or innocence must be voted on by each member and placed of record. Rule 28. The record shows this was not done, for in fact it was not done. Moreover, each member, when the guilt of the person on trial has been ascertained, has the discretionary

power to vote as to what punishment shall be meted out to him. Rule 35.

Counsel make the following extract from the testimony of the relator as a witness:

"Sergeant Aucoin: * * * Commissioner Neinaber moved for myself to be dismissed. * * * Commissioner McCloskey said, 'On what evidence?' Neinaber answered, 'Because the others were dismissed.' There were a few of them dismissed before my case came up." And continued his brief as follows: Therefore, without the question of relator's guilt or innocence being passed on, he was dismissed from the force for the reason that others had been."

By moving "dismissal from the force" no reason was given for the motion. There was nothing on which to base the motion. By failing to "arrive" at a verdict, the chair, in putting the motion to dismiss to a vote, allowed each member to vote for the same for any reason his imagination might supply, without reference to the charge made. Counsel denied that relator had been guilty of laches; saying:

"He was sentenced October 3, 1900. He applied for a new trial October 24, 1900. New trial refused November 7, 1900. Board notified of his intention to have recourse to the courts November 28, 1900. Suit filed March 12, 1901. Judgment rendered April 4, 1901. Petition for appeal October 15, 1901."

Counsel for the board, in his brief, called attention to the fact that the relator was not seeking reinstatement, the sole relief the court could grant him were the proceedings null and void. He does not pray to be instated. The prayer of his petition is for a new trial. The board cannot grant him a new trial, because it had already acted upon his petition, and rejected it. It had exercised its discretion, and exhausted it. The application was timely made, and refused, and the delays for a new trial had now expired. The action taken was not the subject of judicial review. The court cannot exercise appellate jurisdiction over these quasi judicial tribunals. To determine whether relator should have a new trial, the court would have to consider the evidence, and determine its relevancy and sufficiency. A new trial was not the remedy indicated should relator's complaint be well grounded in law.

Reinstatement would result from the absolute nullity of the proceedings, and the board might then, in its discretion, retry him (relator); but he had not prayed for reinstatement, and the court would not give him what he had not asked for. The court's power was to examine the records as made up, and, if nullity extrinsically appeared, to order a reinstatement if prayed for.

Counsel maintained that, if it appeared that a specific charge had been made, timely notice and a regular trial had in accordance with law and the rules of the board, and that upon the evidence a determination had been reached, the court would not inquire into the relevancy or sufficiency of the evidence, or the motives actuating the commissioners. They will be presumed to have regarded their oaths, and honestly exercised their discretion. He maintained that the proceedings were all regular, valid, and legal, and should stand.

The case at bar resembles closely that of State ex rel. McCabe v. Police Board of City of New Orleans, reported in 107 La. 165, 31 South. 662. In that case an officer of the police was dismissed from the force on a charge made against him on a vote taken upon a motion to dismiss. The contention urged here that relator was sentenced without a prior conviction was made in the McCabe Case, but this court held it to be not well grounded in respect to proceedings of the character of those involved in that suit, before quasi judicial boards. This court said: "Unlike an ordinary court of justice, the board was not tied down to any set form. It keeps fairly within the law so long as it conducts its proceedings fairly, without denial of any legal rights, and with sufficient formality to make it appear to a legal certainty that there had been a trial, and a conviction for one of the officers specified by the law, as a good cause for dismissal. An employé tried before such a board cannot lie low for slips in the procedure, with a view to taking advantage of them later before other tribunals on application for certiorari or mandamus. Even in prosecution for grave errors a defendant is not permitted to take advantage of irregularities to which he did not object at the time."

The first point to which our attention is directed is whether the particular relief

which appellant asked for was one which the courts could grant him. Appellees urge that appellant had prayed the board to grant him a new trial; that that application had been duly considered, and been refused; that, in order to determine whether that application was properly rejected or not, this court would be forced to examine the evidence taken before it, and determine whether it was sufficient or not to justify the conclusions reached by the board on the merits, —that appellant did not apply for reinstatement. The claim made by appellant before the district court was that his trial before the board and the sentence had been conducted contrary to all the forms of law, and unjustified by the facts. His prayer was that there be judgment annulling and avoiding the trial and sentence, and that the board be ordered to grant him a new trial, and to proceed therewith under the forms of law; and he prayed for all such orders and decrees as were necessary in the premises, and for all and general relief. The fact that he should have alleged his dismissal to have been unjustified by the facts, and that the court should so decree, did not, because the court could not enter into any investigation of the case from the standpoint of its merits, carry with it as a consequence that he had cut himself off from such other relief under his prayer, which the court could afford him. A party does not lose that to which he is entitled by asking too much. Appellant complained that his trial before the board and his sentence by it were contrary to the forms of law, and should be set aside. He asked that such orders be granted under that situation as would be necessary and afford him general relief. We think this prayer substantially covered a prayer for reinstatement. The court might not have been able to order a new trial had the first one been set aside as having been conducted contrary to law, inasmuch as the board might elect to abandon proceedings altogether under such circumstances; but it had the right to examine into the proceedings, and test them, not as to correctness of conclusions upon the existence, but with reference to ascertaining their legality, and, finding them illegal, to order the board as in duty bound to permit him to exercise his functions as an officer of the police force. We may say here inci-

dentally that this officer is not subject to removal at the discretion of the board, but is entitled to protection under civil service rules. We have examined the proceedings complained of. The facts connected with the arrest of two of the witnesses who were examined on the trial are not shown with precision. Appellant says they were arrested on the spot by the chief of police, under direction of the chair, upon the ground that they were guilty of perjury and contempt of court; that there were other witnesses to be examined, and that the effect of this was to intimidate them and prejudice his case. There is nothing to show that there were other witnesses present who saw or knew anything of the facts complained of. If the chairman of the board, in presence of some of the witnesses, caused the arrest in open session of others for contempt of court and for perjury, as making before the board, under oath, statements contradictory to those which they had made outside, his action was improper, as well as unnecessary. Proceedings against them, if authorized by the facts, could and should have been taken at some other time and place. Whatever may have been done in this matter, appellant raised no objections at the time, and we do not find in the evidence such a condition of things as to impress us that there was resulting injury. The most serious question submitted to us for decision is the legality of the action taken by the board in disposing of the issues before it. It is pressed upon us on behalf of the board that the proceeding before it was not a trial of the appellant upon a criminal charge, that the object was simply to determine whether he was possessed or not of the qualities which were essential to be possessed for efficient service by him as a police officer. That the board was not a court made up of lawyers, but an administrative body, composed of laymen. That they were not tied down to conformity with particular formalities. That there was a special charge made against appellant, upon which evidence was heard on both sides. That the members of the board acted under oath. That when the motion was made that appellant be dismissed the vote taken was necessarily upon the question as to whether the particular charge made had been sustained or not. That the resulting vote for dis-

missal carried with it by necessary implication that the board had found the particular charge made had been sustained. That to assume that the members voting for dismissal had done so from general ideas as to what they might think best for the service, from caprice, or from desire to promote the interests of other parties, from prejudice or ill will, or any unauthorized reason,—would be to reverse the presumption as to the performance of duty by public officers.

These same arguments were advanced in the McCabe Case, and so forcibly impressed the court, that it made use of the language which has been copied into this opinion. The decree in that case, however, did not rest upon a decision of that issue (though it was incidentally alluded to as stated), but upon the application to the rights and obligations of parties of the doctrine of laches. Appellant in the present instance has not acted himself as promptly throughout as he should have done, though he did give notice to the board of his intention to have recourse to the courts. There is no evidence in the record as to whether changes have been made on the police force in consequence of the dismissal of the appellant. It is fair to presume, in view of the length of time which has elapsed since that date, that changes have been made, and that third parties have since then been given positions. We alluded in the McCabe Case to that possible condition of things having resulted from his laches, saying: "This, however, would be no obstacle if the relator had not, by his silence and inaction, contributed to bringing about the situation; but we hold that by not applying for a new trial, or in any way warning the respondent board of his intention to contest, he left the respondent board no choice or discretion but to fill the vacancy." One difficulty in this situation was thus alluded to: "If the relator were reinstated, where, under the law, the back salary accrued during this twelve months of delay would come from, it is hard to say. The reinstatement of relator would bring disturbances to the finances of the defendant, and the respondent is one of the branches of the public service. And this brings into play another principle of the law of mandamus or certiorari."

We think that the consequence to be visited upon parties for laches from this last standpoint should rather be to cut them from claiming salary during the intervening period than to deprive them in the future and forever of their legal rights if any they had.

The decision of the question raised by the appellant is deemed by us so important as furnishing a precedent to boards in their future action in similar cases that we have determined to deal with it as an original one. We recognize the fact that boards of the character of the respondent board are not courts, and that they are not composed of lawyers; also that they should not be tied down too closely by legal formalities. But there are certain matters which they have to deal with which should not be left to inference, but placed beyond the possibility of a doubt. We recognize also that the proceeding before the board was not a trial of relator upon a criminal charge, but the charge was one which involved in the highest degree his character and reputation. In State v. Johnson, 46 La. Ann. 5, 14 South. 295, the jury in a case where the defendant was charged with murder handed in a verdict with the word "manslaughter" written upon the indictment, and, being polled and asked whether manslaughter was their verdict, replied that it was. Defendant's motion in arrest of judgment was sustained by the district court and upon appeal to this court. The defendant, in his brief, contended "that in legal contemplation a verdict is a judgment. It must decide something. It must declare the guilt or innocence of the accused. It must pass. The word 'manslaughter' surely decides nothing. It is the name of a crime only. The court can supply nothing to make a judgment out of this verdict. The jury alone could do that, and it has passed away."

This court, in passing upon the question, said: "We are of the opinion that the verdict is fatally imperfect and defective. It does not pass upon the guilt or innocence of the accused, and, however clear we may be as to the idea which the jury intended to convey, we cannot reach a judgment in a criminal case purely by intendment, as we would have to do here."

In some states, and for some offenses, the jury not only determines the guilt or in-

nocence of the accused, but assesses the punishment; and in such cases it has been held that the jury must find the defendant guilty, and then add the punishment; that the latter without the former would be inadequate. These decisions must obviously rest upon the principle that the court is not authorized or justified to "reason" to an inferred verdict of guilty against the accused. Bish. Cr. Proc. (3d Ed.) § 1012, and notes thereunder. The finding of the jury of the guilt of the prisoner must be direct and positive.

We think that there should, in the present instance, have been a direct and positive finding by the board that relator was guilty of the charge brought against him to have authorized the sentence, and that, the sentence of dismissal not having been preceded by such a finding, it was illegal. When we reached that conclusion, relator became entitled to relief, but it became a matter of embarrassment to know how to· extend it. We are not authorized in this proceeding to inquire into the conclusions of fact reached by the jury. We find nothing in the proceedings on the trial prior to the board's final vote to call for any action on our part, but when we reach that point we do find illegality. Finding the sentence illegal, we have to set it aside, with the necessary result of ordering the reinstatement of the relator. We do not undertake to set aside anything back of the sentence. We do not undertake to give any directions to the board as to what course it pursue after the reinstatement. Whether it have the right to take matters up where the final vote or sentence which has been set aside found them, or whether they will be forced, if they desire to proceed, to proceed de novo, are matters which they must themselves decide.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the district court be, and the same is, reversed, and it is hereby ordered, adjudged, and decreed that the sentence of dismissal imposed ¨by the respondent board by its vote of the 3d of October, 1900, which is the subject-matter of this proceeding of mandamus, be, and the same is hereby, set aside, and the respondent board is hereby ordered to reinstate him upon the police force of the city of New Orleans as sergeant of police, without prejudice to any rights

and remedies which the respondent board may have under the proceedings taken against him, and which are referred to in the pleadings herein.