May 30, 1904.

————————C————————

No. 3321.

(Court of Appeal, Parish of Orleans.)

SERGEANT J. C. AUCOIN vs. POLICE BOARD OF THE CITY OF NEW ORLEANS,

1. The right to suspend an officer or member of the police force for the city of New Orleans, "without pay, pending charges", is vested exclusively in the Board of Police Commissioners.
2. Act No. 63 of 1888, creating the Board of Police Commission-

ers for the City of New Orleans, authorizes the Board, on conviction by it of any officer or member of the police force for any legal offence, or neglect of duty or violation of rules, etc., "to punish the offending party by reprimand, forfeiture, or suspension of pay for a specified time, or by dismissal from the force."

3. Whether upon a conviction by the Board of an officer or member of the force, it may punish the offender by the imposition of more than one of the different punishments stated in the Act, under one conviction for a single offence, is not necessary to a decision of this cause; nevertheless, in order to have the effect of duality of punishments the sentence must specifically, and in terms, impose them.

4. A formal sentence, after conviction, of "dismissal from the force," does not any more than does a sentence of "reprimand," carry with it by its owns force, forfeiture or suspension of pay for the term preceding conviction.

5. The right of a public officer who has been illegally suspended from office, the assumed vacancy having been filled by the Board by the appointment of another who has received the pay, to recover the salary of his office for the period of suspension, is to be determined by the doctrine of laches and acquiescence.

6. As the officer's right to a salary for the period of suspension may be defeated by his laches, so may the right of the Board to withhold payment of it be also defeated by the same cause; for laches presupposes not only the lapse of time, but also the existence of circumstances which render negligence or recklessness imputable.

7. It is well settled that an office which has attached to it emoluments, has a pecuniary value although primarily it is an agency for public purposes, and that the rights to the emoluments follow the title to the office.

8. An officer who has been prevented from performing the duties of his office by an illegal suspension or removal by the governing body, is still an officer *de jure*, and may recover his salary for the period of suspension or removal, although the same has been paid to another officer *defacto* appointed to fill the assumed vacancy: *provided* he has not by his laches or acquiescence superinduced the filling of the assumed vacancy.

Appeal from Civil District Court, Division D.

E. A. O'Sullivan, Plaintiff and Appellant.

Arthur McGuirk, Asst. City Atty, Defendant and Appellee.

MOORE J. Plantiff sued defendant for salary as sergent of police from the third day of October 19co to the first day of Fe-

263

bruary 1903, at the rate of $70 per month, aggregating the sum of $1960, for the period stated; and from a judgment rejecting his demand he prosecutes this appeal.

The facts are that plaintiff, who has been connected with the Police Force of the City of New Orleans for upwards of thirty years, was, on the 31st day of July 1900 "suspended from duty" by the Superintendent of Police, the mode of suspension adopted being a telelegraphic message from the Superintendent to the "Sixth Police Station" stating: "Sergeant Jules C. Aucoin is hereby suspended pending charges against him, from this date "signed D. S. Gaster," the then Superintendent. Subsequently. towit, on the second day of August 1900, the Superintendent lodged with the Police Board a formal charge against the plaintiff of "Cowardice."

On the 3rd day of October 1900, the plaintiff was brought to trial and *without* a formal conviction was sentenced by the defendant Board to "dismissal from the force."

A motion for a new trial having been considered and overruled the defendant notified the Board, in writing, that he would appeal from the Board's action and seek redress in the courts. Within a short while thereafter (March 12th 1901) he instituted proceedings in the Civil District Court for the Parish of Orleans against the Board for nullity of the Board's action and for reinstatement on the police force, from which he had been dismissed by the Board.

From a decision adverse to his pretensions he appealed to the Supreme Court with the result that the judgment of the lower court was reversed; the Board's sentence of dismissal from the force" set aside, and finally ordering the said Board "to reinstate him upon the police force of the City of New Orleans as Sergeant of Police, without prejudice to any rights and remedies which the respondent Board may have under the proceedings against him, and which are referred to in the pleadings herein." State ex rel Aucoin vs Board of Police Commissioners. 110 La. 369.

The Supreme Court, however, to quote its own language, did : "not undertake to set aside anything back of the sentence" nor to "undertake to give any directions to the Board as to what course it pursue after reinstatement"; and still less did it even intimate what, if "any rights and remedies under the proceedings x x x referred to in the pleadings x x x" the board had ; the Court holding simply, that *after* reinstating the plaintiff the future course of action to be pursued by the Board must be decided by the Board. "Whether", is the language of the Court, "it, (the Board) have the right to take matters up where the final vote or sentence which has been set aside, found them, or whether they will be forced, if they decide to proceed, de novo, are matters which they (the Board) must themselves decide."

On the 11th day of February 1903 the Board, by unanimous vote of its members, reinstated plaintiff. Six days thereafter the instant suit was filed.

264

On March 11th 1903, no prior motion having been adopted as to what course of action it would pursue in the matter of the charge against the plaintiff, a resolution was adopted to the effect that "this board at its next regular meeting take up the case of Sergeant Jules C. Aucoin, and that Sergeant Jules C. Aucoin be notified to appear at that date." After the adoption of this resolution, but at the same meeting, however, it was resolved: "That at the next regular meeting of this Board the case against Sergeant J. C. Aucoin be taken up where it was left off, just preceding sentence."

On the 25th day of March 1903 the Board met in regular session, when the case against plaintiff was called.

Plaintiff's counsel then arose to address the Board on behalf of his client and was ruled out of order by the presiding officer pro tem, on the ground "that it was against the rule and custom of the Board to permit attorneys to appear in behalf of accused officers at trials before the Board."

A paper signed by the accused officer was then tendered and permission asked to have it read; the tender was rejected and the request to have it read was refused. Thereupon it was moved and carried by a vote of 4 ayes to 2 nays; (1 absent and 2 excused by reason of the fact that they had become members of the Board only after the examination of witnesses in the cause in 1900 and of course, had heard no evidence in the case whatever,) "that Sergeant Jules C. Aucoin be found guilty"; and then, by the same vote, it was resolved: "That Sergeant Jules C. Aucoin be dismissed from the force." Thereupon notice was at once given to the Board that the Courts would be appealed to.

The paper which the plaintiff offered to file at this meeting and before final action by the Board as to the guilt or innocence of the accused is in the nature of a challenge to the Board's right to proceed against him at that time, and in the manner proposed, for the following reasons, substantially:

1. Because the evidence is not heard anew.

2. Because, as the Board, as presently constituted, has materially changed since the time of the trial had on the 3rd October 1900, in that, two members or the Board at that time, who voted against "dismissal" are no longer members of the Board, whereas two members since elected in place of the former two have heard no evidence in the case whatsoever, hence "he cannot be expected to obtain any legal or equitable decision from the board as now constituted."

3. Because, as nearly three years have elapsed since the evidence in the case was heard, and as it was not reduced to writing, it is impossible to weigh it now, intelligently and impartially.

4. Because no verdict can be rendered under the charge brought in that the "specifications" do not set out "in what he was guilty of cowardice."

5. Because, in open session inquiry was made by the Board of its Attorney as to the effect the granting of a new trial would have as to the accused's right to back salary; to which its Attorney replied, "in that event he (plaintiff) would be entitled to the whole of his salary", and that thereupon the further inquiry was addressed to its Attorney thus: "Should the board dismiss the charges and reinstate the officer, would he be entitled to back salary", to which an affirmative reply was given; that these questions were objected to without effect by accused; and that the effect of these questions and answers indicated that the Board, if it proceeded to a finding and to a sentence, would be influenced by the question of payment of back wages rather than by the question of guilt or innocence of the accused; and

6. That in view of the pendency of a suit (the instant suit) for back salary, action by the Board should be stayed until final decision of this question.

Subsequently, (March 30th 1903) five days after this final action by the Board, the plaintiff sued out proceedings in the Civil District Court looking to the annullment of this action by the Board and for his reinstatement on the force. From an adverse decision therein the plaintiff appealed to the Supreme Court and the case is pending there, but undetermined.

On the 27th March 1901, being fifteen days after the first mandamus proceeding instituted by the plaintiff, and which was finally determined by the Supreme Court on appeal, *supra* and eight months after the original sentence against plaintiff, the defendant Board increased the number of sergeants from fourteen, which it was when the plaintiff was "dismissed from the force" on the 3rd of October 1900, to sixteen, and filled all said places by promotions from the force, no filling of Aucoin's place having been made in the meanwhile. Which one of the 16 sergeants thus appointed on the 27th March 1901, filled Aucoin's place, the secretary of the Board testifies, and there is no evidence to the contrary, "it is impossible for anyone to tell."

From the time of his "suspension" by the Superintendent of Police, to this time, plaintiff has performed no services on the force. The tenure of a member of the police force is, under the law "during good behavior"; the salary of a sergeant is $70 per month.

These are the salient facts in the case. The plaintiff's argument in support of his claim for his salary, may be summarized thus:

1. That he was never suspended from the force, because: A. if that power exists at all, without first a trial and conviction, it is existent in the Board of Commissioners and not in the Superintendent of Police; and B, because, even if lodged in the Superintendent, that officer is powerless to suspend any member of the force "without pay", that power being in the Board *exclusively*, and then only as a "sentence" after trial and conviction duly had."

2. That even if he was lawfully suspended, the suspension ceased when he was tried and dismissed from the force.

266

3. That the judgment of the Supreme Court reinstating him had a retroactive effect, and as he was illegally discharged on October 3rd 1900, he is entitled to his salary from that time to the date of his reinstatement, Feburary 11th 1903.

The argument of the Police Board may be summarized as follows:

1. That, at the time the charges were brought against Aucoin, he was, in accordance with law, public policy, and the rules of the Board, suspended from his position, which public necessity required the Board to fill without delay, and which it did fill.

2. That the right to draw the salary affixed to any municipal office grows out of service actually rendered, and that an officer who has been kept out of his office and not performed his duties, cannot maintain an action against the Police Board to recover the amount accruing from the office.

3: That Sergeant Aucoin is an officer of the State, falling under the provisions of Article 219 of the Constitution, which provides that all officers against whom articles of impeachment are preferred shall be suspended from office during the pendency of such impeachment; that charges preferred by the Police Board are in the nature of the impeachment or removal of office provided for by the foregoing article of the Constitution, and that, as a consequence of the pendency of such proceedings, suspension, pending such impeachment, follows.

4. That plaintiff was not unconditionally reinstated upon the police force of the City of New Orleans, but that the decision of the Supreme Court annulling the sentence imposed on him gave him no other nor further right than he originally possessed just prior to the passage of sentence upon him, and that even at that time he could not have sued to recover his salary because he was suspended without pay under charges; and

5. That plaintiff, under his own testimony, is estopped, in that he said he acquiesced in the suspension, made no objection to the appointment of his successor, and made no demand for salary.

In our opinion, however, the whole case turns upon the solution of the following questions:

First. Had the Superintendent of Police authority under either the law or under the adopted rules and regulations of the Police Board, to "suspend from duty pending charges," the plaintiff.

Second. If he had such authority did its exercise carry with it, under the rules and regulations of the Board, deprivation of salary for the period intervening between the "suspension" and the final action by the Board on the charges preferred against plaintiff.

Third. Does final sentence by the Board, after due trial and conviction of an officer against whom charges had been preferred, carry with it, *in the absence of any declaration to that effect in the sentence imposed*, a loss to the convicted and sentenced officer of his

267

salary for the intervening period between "suspension" and final conviction and sentence; and

Fourth. If it does not, then does the filling of the office from which the officer has been "suspended" by the appointment of another in the intervening period between "suspension" and final judgment of "dismissal from the force", the latter receiving the salary of office, deprive the "suspended" and finally "dismissed" officer of his right to be paid his salary by the Board for this period, notwithstanding the fact that the officer was not permitted to perform the duties of his office and did not perform any such during that period, and when it is shown that he had exhausted all legal remedies before the Board to obtain a new trial, timely applied for; cautioned the Board against its action in dismissing him from office, and promptly notified them of his intention to appeal from their action to the Courts, and who does, with vigilance and promptitude, after final action by the Board, file his suit to annul the Board's action and for reinstatement and who is finally successful in such suit?

These form the crucial test of plaintiff's right of action, for it may not be doubted that, if the Superintendent of Police was without any authority to suspend the plaintiff or, if being with authority so to do, the suspension did not carry with it a loss of the salary; and if the sentence of the Board of "dismissal", silent as to salary for the past, does not include forfeiture of that salary; and if the filling of the office by the Board, pending its final action on the charges, was the result of its own imprudence and haste and is in no manner attributable to the laches or want of due diligence on the part of plaintiff, and is no bar to his recovery notwithstanding the fact that the salary was paid to the officer appointed in his place, the plaintiff, may recover.

To answer these questions correctly inquiry is necessarily directed to the law creating the Board and defining its powers, and to the rules and regulations adopted by the Board; and, so far as the statute and the rules and regulations of the Board affect or concern these inquiries, we will now collate and state them.

The act creating the Board is Act No. 63 of 1888. Its 6th, section provides that:

"The said Board shall appoint a superintendent xxx and the said Board shall, with the sanction of the mayor, promulgate all rules, regulations and orders to the police force, through the superintendent of the police force, who shall be the executive head of the whole force, and shall have the direction of said police force subject to rules, regulations and orders of said Board; provided, however, that nothing herein shall be construed so as to impair, diminish or reduce the power of the mayor as commander-in-chief of said police force to issue such orders as might be necessary and proper for the preservation of the peace of the city of New Orleans and promote the efficiency of said force."

Rule 56 of the Board declares that: "All orders to the Superintendent of Police shall emanate from and be issued to him *only* by the Mayor and the Board of Police Commissioners; and all orders to the police force shall be issued by the Superintendent to the Captains or Sergeants and by them to the force or any member thereof."

Section 13 of the Act provides, that: ."The said Police Board shall have power in their discretion *on conviction of* any officer or member of said police force for any legal offence or neglect of duty, for violation of rules, or disobedience of orders, or incapacity, or absence without leave, or any conduct injurious to the public welfare, or immoral conduct, or conduct unbecoming an officer, or other breach of discipline, to punish the offending party by reprimand, *forfeiture* or *suspension* of pay for a specified time, or by dismissal from the force xxx"

Section 16 of the Act provides that: "The said Police Board in furtherance of the police government and for promoting and perfecting the police discipline, of officers, and subordinates of the police force, are empowered, in their discretion, to enact, modify and repeal, from time to time, orders, rules, and regulations of general discipline wherein addition to such general provisions as may be deemed expedient by said Board there may be *particularly defined, enumerated and distributed, the . powers and du ties and liabilities* of the officers, clerks and members of the police force and wherein shall be declared the mode of appointment to office, the manner of discipline and procedure of trial and removal. from office of said officers, clerks, and members of said force; provided, that such laws, ordinances, orders, rules and regulations, forms and modes of procedure shall not conflict with any of the provisions of this act."

Rule 35 of the Board ordains, that: "Any member of the police force may be punished in the discretion of the Board, either by reprimand, *suspension from duty and pay for a specified time, reduction, forfeiture and withholding pay* for any one offence. or by dismissal from the force *on conviction* of either of the following charges, to wit:" Then follows an.enumeration of a number of offenses on which "conviction" may be had, "cowardice" being among the number.

Rule 292 provides that: "For neglect of duty or violation of the rules and regulations any commanding officer may suspend from duty a subordinate and he shall thereupon report the facts of the case and the reasons for the suspension to the Superintendent."

Rule 32 declares that: "Whenever an officer shall be suspended from duty pending charges, the secretary of the Board shall be immediately notified thereof, and the fact of such suspension shall also be set forth on the charges in red ink."

Rule 191 declares that: "The salary and pay of the police shall be paid to each person entitled thereto in accordance with prescribed rules and regulations subject, however, to such deductions for lost.

or sick time, *and as shall be made to satisfy fines imposed on any member by way of discipline or punishment.*"

It is manifest from the foregoing excerpts from the statute creating the Board, and from the ordinances of the Board, which excerpts include all that may be found in either having any pertinency to the issue involved herein, that both the statute and the ordinances are silent as to the right of "suspension from duty", pending charges, or otherwise, of any member of the force by the Superintendent of Police acting on his own motion.

Whilst he is "the executive head of the whole force", and as such, (with, however, the "sanction of the mayor," who is the "commander-in-chief of said police force",) authorized to "promulgate all rules, regulations and orders to the police force," (sec. 6, Act 63 of 1888) nevertheless the authority "for promoting and perfecting the police government, and for promoting and perfecting the police discipline of officers, subordinates of the police force", is by section 16 of the Act, *supra*, vested exclusively in the Board and not in the Superintendent.

The former is "empowered in their discretion, to enact, modify, and repeal from time to time, orders, rules, and regulations of general discipline, wherein, in addition to such general provisions as may be deemed expedient by said Board, there may be particularly defined, enumerated and distributed the powers and duties and liabilities of the officers, clerks and members of the police force, and wherein shall be declared the mode of appointment to office, of the manner of discipline and procedure of trial and removal from office of said officers, etc."

Under this grant of power the Board might have the authority to suspend an officer pending charges, or it might possibly delegat e that power to any particular officer, or to all of a particular rank or grade.

It has not, however, so for as we have been able to discover, provided by any rule or regulation that pending charges an officer may be suspended, nor has it in particularly defining, enumerating and distributing the powers and duties "of the Superintendent of Police, or in declaring" "the manner of discipline of said officers" empowered or authorized that particular officer to suspend any member of the force, nor is this power inherent in that officer as arising from the power of appointment and removal, for he possesses neither the one nor the other, both being lodged in the Board alone.

True it is that Rule 32 provides for the immediate notification thereof to the secretary of the Board "whenever an officer shall be suspended from duty pending charges," (and this is the only instance either in the statute or in the Board's rules wherein "suspension pending charges" is mentioned,) but neither in this rule nor elsewhere is it provided that any individual official of the force may, on his own motion, and without authority from the Board or the Commander-in-Chief (the Mayor), take such action.

Nor does Rule 292 confer this authority on the Superintendent. This rule authorizes simply a temporary suspension from duty of "a subordinate" by any "Commanding Officer," (Captain, Sergeant or Corporal,) for neglect of duty or violation of the rules, and it requires report of the facts of the case and the reasons for suspension to the Superintendent.

The argument that it is unreasonable to suppose that the Board would have empowered captains, sergeantsand corporals to suspend subordinates for any infraction of the rules, and not invest that power in the Superintendent when charges are pending against a member of the force, cannot be admitted for the reason that, conceding for the argument that the Board is authorized to delegate that power to any of its appointees at all, it had the right to select any official of the police force as it saw fit to invest that power, and it did not see fit, either from oversight or through design,to invest the superintendent with that right; and, as this rule expressly declares that suspensions thereunder are to be reported to the Superintendent, it is clear that it was not in the contemplation of the Board when that rule was adopted, to include that officer with the investiture of the powers therein conferred on commanding officers.

Besides this,if we are to infer that officers other than those specially designated in that rule are vested with that power because of their superior rank, then it would follow that the Commander-in-Chief, who is superior in rank to the Superintendent, would likewise have that power. Indeed, it seems more likely from the context of the Act that besides the Board, which unquestionably has this power, the Comander-in-Chief, who by the Statute, (sec 6,) is authorized "to issue such orders as might be necessary and proper xxx to promote the efficiency of the force" has also this power to suspend. At any rate we may not be permitted to eke out by inference the inclusion in a statute or in rules and regulations of one particular official as authorized to exercise delegated powers, when another is specially mentioned as the one so empowered; nor to include the former as comprehended in the grant to the latter because of his superior rank or station over him who is specially designated and authorized.

Appreciating the absence in the statute and in the rules of the Board, of a special grant of this power to the Superintendent, the learned counsel for the defendant Board argues that under the Constitution of the State and under the charter of the city of New Orleans suspension from office follows *eo instanti* the preferment of charges and this without any action whatever of either the Board or of any official of the police force.

The argument of the learned counsel on this branch of the case is that the proceeding instituted against the plaintiff was in the nature of "an impeachment or quasi impeachment proceeding", and for as much as Art 219 of the Constitution provides that "all officers against whom articles of impeachment are preferred, except the

271

governor, shall be suspended from office during the pendency of such impeachment xxx"; and as section 85 of the city charter contains the provision that "pending xxx impeachment, and until the final disposition thereof (officers against whom articles of impeachment are pending,) shall not exercise any of the functions of their office"; and as a policeman is either a State officer or an officer of the municipality (the city of New Orleans) the pendency of impeachment proceedings suspends him, *ipso facto*, from office.

The Constitutional article, *supra*, can find no place in the discussion of this question because it refers solely and exclusively to the impeachment of the particular State officials enumerated in Article 217 of that instrument ; nor do any of the other articles to be found under the head of "impeachment and removal from office" in the Constitution relate in any manner or have any bearing on the question of the effect of the "impeachment" of a policeman by the police board. These constitutional articles apply exclusively to quite a different class of officers, namely: To such as are elected by the people or appointed by the executive. Richard vs Rousseau, 35 A 933 ; State ex rel Denis vs Mayor 43 A 93.

So also is it with section 81 of the city charter. That section refers to pendency of impeachment proceedings before the City Council of any officer elected by them and has no reference whatever to impeachment proceedings of other public officials elected by another body and not subject to impeachment and trial by the City Council.

Conceding, however, for the argument, that the Superintendent had the power to suspend the plaintiff from duty pending charges, did its exercise carry with it, *proprio vigore*, forfeiture of salary' for the period intervening between the order of suspension and final action by the Board on the charges preferred ?

Forfeiture or suspension of pay are among the penalties which the act creating the Board declares may be imposed off any member of the force *on conviction*, after trial by the Board of the offending officer. (Sec 13, Act 1888.) The Board has not conferred nor could it legally confer or delegate the imposition of this penalty to the Superintendent, nor to any other person or set or body of men. It may not be disputed, therefore, that unless this penalty has been imposed by the Board it did not follow as a necessary consequence of the suspension ordered by the Superintendent.

Having concluded that the suspension from duty pending charges, of the plaintiff, by the Superintendent of Police was without warrant ; but that even if it was, the suspension by that officer did not of its own force carry with it "forfeiture or suspension of pay," we are brought to the consideration of the question: whether a sentence by the Board, after trial and conviction, of an officer against whom charges have been preferred, carries with it, *in the absence of any declaration to that effect in the sentence imposed*, for forfeiture of pay for the time between the order of suspension and the final conviction and sentence of dismissal from the force ?

272

As we have shown the statute authorizes the trial of any member of the police force by the Board for infraction of any one or more of the offences enumerated in sec. 63 of the Act creating the Board, and it specifically fixes the punishment, after conviction, which the Board may inflict, as follows : "Reprimand", forfeiture or suspension of pay for a specified time"—or "dismissal from the force."

Forfeiture or suspension of pay is recognized by the Act as "fines" imposed as a penalty or punishment for the offence for which the officer has been convicted ; for it provides that "all fines imposed by the Police Board upon members of the police force by way of discipline. and collectable from pay or salary x x x shall constitute and be deposited and kept as a fund to be called the Police Pension Fund." Sec. 23 Act 63 1888. Ibid Sec. 13.

It may be doubted whether, under the terms of the act, more than one of the penalties which the Board is authorized to impose, may be inflicted on a member of the force on a single conviction for one and the same offence, and it may not do so, seems to be the Board's interpretation of this section for. by its 35th rule the singularity of sentence on conviction is emphasized by the employment of the conjunction "*either*" preceding the enumeration of the several punishments which may be imposed ; thus :

Rule 35 : 'Any member of the police force may be punished in the discretion of the Board, *either* by reprimand, suspension from duty and pay for a specified time, reduction, forfeiture and withholding pay; for any one offence, *or* by dismissal from the force, on conviction etc."

But whether the statute or the rules may permit a duality of punishment for one conviction for a single offence or not, it is clear to our thinking that the dual punishment must be specifically expressed in the sentence imposed. In the instant case the sentence was simply that "Sergeant Jules C. Aucoin be dismissed from the force." . This did not carry with it all, or any one of the additional punishments which the Board is authorized to inflict.

A sentence of "dismissal from the force" does not, no more than does a sentence of reprimand," or simple "suspension for a specified time," *unless so declared in the sentence* impose either "reduction or forfeiture or withholding of pay."

The argument of the learned counsel concedes that if the verdict of the Board had been not guilty and the charge had been dismissed, the plaintiff would then have been entitled to his salary for the period of suspension. The logic of his concession is necessarily followed on the theory that conviction, ex necessitate ei, carries with it the infliction of a fine—forfeiture of pay—even though the sentence does not so affirm ; whereas acquittal is the reverse. In our opinion the officer may recover in either case, unless the fine is specifically imposed or is so included by statute,

Unless, therefore, there is force in the contention that the filling

273

of the office, from which plaintiff was suspended, by the appointment of another who performed the service and received the salary, precludes the suspended officer from recovering the salary due for the period of his suspension, the plaintiff is entitled to judgment.

The right of a public officer, *de jure*, to recover his salary of the governing body notwithstanding the fact that he has not performed the duties of his office and that these duties have been performed by, and the salary paid to, an officer *de facto* appointed to fill an assumed vacancy, is, like the question of reinstatement after the filling of the assumed vacancy, determined by the doctrine of laches and acquiescence.

If the officer has been prevented from performing his duties of office by an illegal removal and he makes no effort to obtain a new trial ; take no steps to have himself reinstated by the governing body, or to prevent that body from filling the assumed vacancy ; does not caution them against their action ; nor warn them that he will seek redress in the courts ; or does these only after the expiration of an unreasonable delay ; or where by other laches and delays he induces the belief that he acquiesces in the removal, and the vacancy is then filled and the salary paid to the *de facto* officer ; the former cannot recover the salary for the period of removal.

The rights of the governing body from whom the salary is sought to be recovered is prejudiced by the laches and delays of the amotioned officer and he may not be permitted to profit by his own wrong. The maxim "Vigilantibus non dormientibus subvenit lex" is particularly applicable to the assertion of a right under such circumstances. But where the very reverse is the case ; where the officer proceeded with all due diligence ; safeguarding and protecting his rights throughout ; timely applying for a new trial ; timely appealing to the courts ; warning the governing body at almost every step of its proceedings against its actions, as all of which is the case here, and the governing body in disregard of all this proceeds to fill the assumed vacancy, it does so willfully and at its peril, and the right of the officer *de facto* to his salary under the circumstances may not be denied.

As the officer's right to his salary may be defeated by his laches, so may the governing Board's right to withhold it from him be also defeated by the same cause ; for laches presupposes not only lapse of time, but also the existence of circumstances, which render negligence or recklessness imputable.

It was the application of the doctrine of *laches* in the McCabe case, 107 La. 162, that defeated the relator there, and it was the *diligence* of the relator in the Aucoin case, 109 La. 369 that protected the latter in this case.

What was said by the Court in both these cases as to the question of the reinstatement of these officers apply with equal force to the question of salary. In the one case as in the other, the court assumed that the vacancy had been filed. "This, however", said

the court in the McCabe case, "would be no obstacle (to the reinstatement of the relator) if the relator had not by his silence and inaction contributed to bringing about the situation, but we hold that by not applying for a new trial, or in any way warning the respondent board of his intention to contest, he left to the respondent board no choice or discretion to fill the vacancy."

In the Aucoin case (109 La 369) the Court repeated that the filling of the assumed vacancy was "no obstacle" to reinstatement, but finding that Aucoin had not, in any manner "contributed to bringing about the situation" stated that he was improperly and illegally removed, and ordered his reinstatement.

As the filling of the assumed vacancy is no obstacle to reinstatement if the officer has been illegally removed and he has not, by his laches, barred himself from this relief, so also does it logically follow that the filling of the supposed vacancy and the payment of salary to the *de facto* officer, when the board has been fully warned and put on its guard against such action, are no obstacles to the right of the illegally suspended officer to recover the salary for the period of suspension.

Discussing a similar question the Supreme Court of Maine (Andrews vs. City of Portland, 79 Maine 484-Atl. Rep Vol 10 p458) said: "The city had full notice of the plaintiff's claim as the legal officer, that the title of the office was in litigation. It must be held that it knew that the legal title to the office would draw with it the salary. May it assume to determine the question of legal right between the parties before decided by the Court, pay to the one having no legal title, and then successfully set up its action in defence of the claim of the one having the legal title?

"It .is perfectly well settled that it cannot. If it elects it is at its peril. xxx

"It is well settled that an office which has attached to it emoluments, has a pecuniary value although primarily it is an agency for public purposes and that the right to the emoluments follow the legal title to the office. Can it be while the action of the mayor and aldermen of Portland, in the attempted removal of the plaintiff, was illegal and void, as affecting his title to office, that it deprives him of his salary—all that was of pecuniary value to him? Such a contention has no support in well established legal principles."

We are told, however, that Hassard vs. Municipality, 7 A 495; Sigur vs. Crenshaw, 10 A 297; State vs. Ramos, 10 A 420; Petit vs. Rousseau, 15 A 239; George vs. Tucker, 27 A 67; Fassy vs. New Orleans, 17 A 299; and Michel vs. New Orleans, 32 A 1094, teach a different doctrine. We do not so read them:

In the Hassard case (7 A 495) a night watchman was suspended in obedience to a resolution of the police committee. The act authorized the recorder, who was the official that suspended the watchman, to suspend any police officer reporting same to the Council for their decision. The Court said that the policeman "submitted, made

no protest or application to the Council to be reinstated in his office and in the discharge of the duties for the performance of which they had elected him. He remainded quiet to the end of the year, without doing duty a single night, so far as appears, and then sued for a year's salary." There was judgement in the lower court for plaintiff. The Supreme Court said that plaintiff's claim was "doubtful" and remanded the cause for a new trial.

Neither in the Sigur case (10 A 297); nor in the Ramos case (Ibid 420); nor in the Petit case (15 A 239); nor in the George case (27 A 67), was the question of the right of an illegally suspended or removed officer to sue the governing body for his salary for the period of removal involved.

In Fassey vs. New Orleans, 17 A 299, the officer who was suing the city for the emoluments of his office had been removed therefrom and another appointed in his stead, not by the city, but by the United States military authorities which, said the Court, had the "municipal affiairs under their exclusive control." The act of removal was the result of military or martial law, said the Court, and the city was in no way responsible therefor.

The principle on which this case is decided is precisely that which we have announced, *id est* that no responsibility rests with the governing body when the conditions which brought about the filling of the vacancy was attributable to no fault or laches of that body.

In Michel vs. City, 32 A 1095, plaintiff sued the city for his salary as receiver of the Sixth District, an office to which he had never been inducted, and consequently had never been suspended or removed from. He was appointed by the governor. The incumbent had been previously elected by the City Council.

Michel never had the office for an instant of time during the period for which he claimed the salary to be due him. Therefore there is no analogy between the instant and that case.

It must be remembered that in the instant case the action of the Police Board in filling the vacancy, followed the plaintiff's mandamus suit (filed March 12th 1901) by 15 days, the vacancy, having been filled on the 27th March 1901; and *preceded* the *conviction* of the plaintiff by *two years;* the formal conviction having taken place on the 25th March 1903.

From what we have said it follows that plaintiff is clearly entitled to his salary as Sergeant of Police from the day of his suspension until the day of his conviction, March 27th, 1903, but as plaintiff only claims salary from the 3rd October 1900 to 1st Feb. 1903, thereby remitting and abandoning the balance, we will make judgment accordingly.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and the same is hereby avoided, reversed and set aside, and it is now ordered, adjudged and decreed that plaintiff, Jules C. Aucoin, do have judgment against the Police Board of the

City of New Orleans, in the sum of Nineteen Hundred and Sixty Dollars with legal interest thereon from judicial demand until paid, and costs of both courts.

May 30th, 1904.