STATE v. NORMAN LEWIS.

(Filed 15 March, 1911.)

</div>

**Murder, First Degree—Evidence Sufficient.**

> The evidence in this case tended to show that the deceased, a chief of police of a town, went with a posse to arrest the prisoner at the latter's home at night; that he called the prisoner to come to the door; that the prisoner recognized the deceased as the chief of police and knew he had a warrant for his arrest; that the deceased waited about twenty to twenty-five minutes for the prisoner, who said he first wished to put on his shoes, and then asked the prisoner to come on, he was in a hurry; that the prisoner then said he was not coming, as deceased had a warrant for his arrest, and that then, at the prisoner's direction, his wife opened the door, as all of the lights went out, when the prisoner fired a gun directly into the breast of the officer, inflicting a wound from which he soon thereafter died. Under a correct charge, wherein the crime of murder in the first degree was defined: *Held*, evidence sufficient for conviction of murder in the first degree.

APPEAL from *Peebles, J.,* at November Term, 1910, of NASH. Indictment for murder. There was verdict rendered that the

prisoner was guilty of murder in the first degree. Judgment imposing sentence of death, and prisoner excepted and appealed.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Hoke.*

*Attorney-General and G. L. Jones for the State.*
*F. S. Spruill for defendant.*

Hoke, J. We have given the case the careful consideration which the supreme importance of the issue demands, and find no reversible error. The evidence tended to show that on the night of 18 September, the deceased, J. M. Stallings, chief of police of the town Spring Hope, Nash County, having a valid warrant, went with two others to the home of the prisoner to effect his arrest. It was in the early hours of the night, about 8:20, and, so far as the evidence shows, there was nothing done out of the ordinary to excite the fears or arouse the anger of the prisoner, but only a call by the deceased for the prisoner to come to the door. The conversation of the prisoner showed that he recognized the deceased and that he was chief of police and had a warrant for the prisoner's arrest. Thus he said: "Chief, let me put on my shoes; I am barefooted." That he put on his shoes and delayed in the house some 20 or 25 minutes. The deceased then said: "Norman, come to the door; I am in a hurry." The prisoner replied: "I'm not coming. Some of them damn negroes have been telling lies on me. You have got a warrant for me and I'm not coming." The deceased said: "Come on; I am sort of in a hurry." The prisoner then spoke to his wife, saying: "Siddie, open that there door." Just then the light in the house went out, the door flew open and the prisoner fired a shotgun directly into the breast of the officer, inflicting a fatal wound, from which he died on the third day thereafter. That the prisoner, having then escaped by the back door, fired a shot back at the posse as he went off. On cross-examination, a witness, one of the posse, said:

Q. "Did you see Norman before the light was extinguished?" Answer: "Yes, sir."

Q. "Can you tell who shot the gun?"  Answer: "Yes, sir."

Q. "Describe how you can tell it."  Answer: "I heard Norman walking over the floor and talking to Mr. Stallings, and when he said, 'Siddie, open the door,' right where he stopped walking at the gun fired from."

Q. "After Stallings was shot, did you see anything of Norman Lewis?"  Answer: "Yes, sir; I saw him after he came out of the back door and he got about 30 yards out in the field and shot back at us," etc.

On this and other supporting testimony, the court having defined and explained the crime of murder and stated what was required to constitute murder in the first degree, referred the question to the jury, who rendered the verdict for the higher offense.  And as stated, there is nothing in the record which tends to impeach the correctness or validity of the verdict.  If the two excerpts from his Honor's charge standing alone are the subject of criticism at all, they seem to err rather in favor of the prisoner, but as a matter of fact they only served to direct the mind of the jury to the controlling facts relevant to the issue, and when taken in connection with the entire charge they are free from any just exception.  In *S. v. Exum,* 138 N. C., 599, the Court cites, with approval, from Thompson on Trials, sec. 2407: "That the charge of a court should be considered as a whole, in the same connected way in which it was given and upon the presumption that the jury did not overlook any portion of it.  If, when so construed, it presents the law fairly and correctly to the jury, it will afford no ground for reversing the judgment, though some of the expressions, when standing alone, might be regarded as erroneous."  Applying the principle, we are all of opinion that no reversible error appears, and the judgment on the verdict must be affirmed.

No error.