JOHN H. DELIGNY v. TATE FURNITURE COMPANY.

(Filed 17 November, 1915.)

1. **Master and Servant — Employer — Pleadings — Defective Appliances — Approved and in General Use—Other Negligent Acts—Trials—Questions for Jury.**

Where an employee of a furniture manufacturing company sues for damages, alleging that the defendant negligently failed to provide for the "belt sander" or polishing power-driven machine, at which he was required to work, an iron cleat, one edge of which was finished with teeth something like a saw, which was known, approved and in general use, and that instead thereof provided for the machine a thin strip of wood or timber, nailed to the top of the table of the machine, which was weak, flimsy and insufficient, and not adapted to the use to which it was being put, and that the boards to be dressed or polished by the plaintiff were warped and twisted, thereby increasing plaintiff's danger, and in consequence of this failure of defendant to perform his duty, etc., the injury complained of was caused: *Held,* the negligence alleged consisted not only in the failure of the master to furnish a device known, approved and in general use, but that it negligently furnished an improper or defective device rendered more unsafe by the warped and twisted boards, and the lack of proof by the plaintiff that the device alleged was known,.

approved and in general use left the further question of defendant's
negligence in furnishing the defective appliance and improper boards,
when there was a conflict of evidence, to the determination of the jury.

**2. Pleadings—Amendments—Court's Discretion—Appeal and Error—Interpretation of Statutes.**

An amendment to the complaint is necessary for the plaintiff, in an
action to recover damages for the negligence of the defendant, when his
evidence does not correspond with the facts alleged by him; and where
a new cause· of action is not alleged by the amendment, the court may
allow it in its discretion upon such conditions as will protect the other
party against being taken by surprise, or direct the facts to be found
according to the evidence, if the variance is not material (Revisal, secs.
515, 516), or if the variance is material, and the adverse party has been
taken by surprise or misled, the court may allow the amendments upon
such terms as may be just. Revisal, sec. 515.

**3. Same—Supreme Court.**

In proper instances the Supreme Court will allow an amendment to
the complaint, for the furtherance of justice. Revisal, sec. 1545.

**4. Master and Servant—Employer—Pleadings—Negligence—Allegations of Separate Acts—Appeal and Error.**

Where, in an action to recover damages for an injury alleged to have
been negligently inflicted by several acts of the defendant, each is suffi-
cient in itself to sustain a verdict in plaintiff's favor, the elimination of
one or more of them will not deprive the plaintiff of his judgment when
one or more of the alleged causes of action have been legally and properly
established.

**5. Master and Servant—Contributory Negligence—Trials—Evidence—Questions for Jury.**

Upon the question of whether a servant is guilty of contributory negli-
gence in continuing to work at a power-driven machine in the face of
an added danger due to the master's negligent failure to inspect the
machine or correct the defect after he had been informed thereof, etc.,
it is competent for the jury to consider the relative positions of the· par-
ties, and the circumstances that the servant is dependent upon his wages
for a living, etc.; and the right of action of the servant will not be barred
either by the doctrine of assumption of risk or contributory negligence in
continuing to work under the existing conditions, unless the danger was
so obvious and threatening, or the chances of danger were so much
greater than those of safety, that a man of ordinary prudence would
not have continued to work there.

**6. Same—Instructions—Construed as a Whole—Error in Part—Appeal and Error.**

When contributory negligence and assumption of risk are relied on
in an action to recover damages for personal injury, and the evidence
is conflicting on the issues, the questions are for the determination of
the jury under correct application of the principles of law to the facts
by the charge of the court; and where the charge of the court, construed
as a whole, is clearly and unmistakably and correctly expressed, so that
the jury could not have been misled, fragments thereof, taken separately,
though subject to criticism, will not be held reversible error.

**7. Master and Servant—Negligence—Defective Appliance—Evidence of Former Defect.**

Where the damages sought in an action to recover for a personal in-
jury are alleged to have been caused by a defective machine furnished

by a master to the servant at which the latter performed his services, and there is evidence thereof, it is competent for the plaintiff to testify that the machine had been working badly before then by reason of the defect alleged, especially when there is evidence that the plaintiff had theretofore reported the defect and the defendant had promised to correct it.

8. **Trials—Improper Questions—Appeal and Error—Unanswered Questions—Impeachment—Procedure.**

An improper question asked a witness on the trial of an action, for the purpose of impeaching his testimony, will not be considered on appeal unless it is in some way made properly to appear what the answer would have been, or that it was prejudicial to the appellant. In such instances the complaining party should immediately appeal to the trial judge for his intervention to correct the abuse, in his sound discretion, from which there is no appeal unless in very exceptional cases.

APPEAL by defendant from *Lyon, J.,* at February Term, 1915, of GUILFORD.

Civil action. The plaintiff sued for damages for personal injury sustained while working in the factory of the defendant at High Point, N. C., on 19 May, 1914, when plaintiff suffered a fracture of both bones in his right forearm. He alleged that at the time of the injury he was engaged in operating a belt sander, and properly described it as consisting of a table or bed at each end of which was a pulley, around which ran a sand-belt, which is a belt with one side sanded for the purpose of polishing material. The course of the belt, in one direction, is over the top of the bed and lengthwise thereof, and on its return it moves under the table. The bed is movable both up and down, and back and forward across the line of the belt. The operation of the machine consists in placing the board or other material to be sanded on the bed, and then, after raising the bed to a proper height, pressing the sanded or underside of the belt down upon the material by means of a wooden weight in the shape of a flat-iron applied on the top of the belt. In order to cover the full surface of the material to be sanded the table is, during the operation, moved backwards and forwards across the line of the belt. The machine at which plaintiff was working had a wooden strip of about the thickness of the material under treatment nailed across the bed at right angles to the line of the belt, and near the end of the belt, toward which the belt tended to draw the material. This was placed there to resist the tendency of the belt to draw forward with it the material being sanded. In the side of this strip, and next to the material, were sharp iron points about an inch apart, protruding therefrom and parallel to the bed of the machine, thus forming a cleat, for the purpose of taking hold of the material when pushed against it and preventing it from rising above the cleat and being pulled forward in the direction of the belt. The pieces which the plaintiff was sanding at the time of his injury were quartered oak bed panels, 22 inches wide,

about 4 feet long and a quarter of an inch' thick. The plaintiff charges the defendant with negligence in two particulars:

First. In failing to "equip this machine or sander with the iron cleat of the character hereinbefore set out," which the plaintiff alleged was in known, approved, and general use; and,

Second. In furnishing to the plaintiff and requiring him to work upon the said machine panels, which were more or less warped and twisted and liable to escape from the fastenings.

The defendant admitted that the machine was not equipped with the iron cleat described, but denied that the said iron cleat was in known, approved, or general use, or that its use would be practicable on the machine in question, or that it would render said machine any safer, and alleged that the wooden cleat furnished served the same purpose as alleged in respect of the iron cleat, was just as safe, and was better adapted for sanders for thin material where the use of the iron cleat was not practicable. The defendant denied, according to its knowledge, having furnished to the plaintiff, for his use in operating the machine and doing his work, warped and twisted panels, and alleged that it was a part of plaintiff's duty to select from the panels furnished him *en masse* such as were warped or twisted and lay them aside to be sanded by hand. The defendant averred that if the plaintiff was injured because of a warped or twisted panel such injury was the result of his own negligence in attempting, contrary to instructions, to sand such panel on the machine, and pleaded assumption of risk and contributory negligence.

So far we have taken our statement substantially from the brief of defendant's counsel, which we think, from a careful examination of the record, is perfectly correct in the main, but as there is some disagreement between counsel of the respective parties as to what is the particular act of negligence charged against defendant and as to the true nature and construction of the "sander," we will make some extracts from the plaintiff's complaint, for he contends that he has alleged, as specific acts of negligence, apart from the absence of a metal cleat, that the wooden cleat was itself an improper and insufficient appliance for the safe and effective operation of the machine, and that this is especially so if the planks or boards being dressed are bent or warped. These are his allegations expressed almost in his own language:

1. The defendant, in operating its factory, used numerous and various kinds of machines and machinery, including a belt sanding machine, in its said factory at High Point, all of which were propelled by steam power, involving the use of shafting, pulleys, belts, and other appliances.

2. There is much danger attending the operation of many of said machines, including the sanding machine, which the plaintiff, on the occasion of his injury, hereinafter more fully set out, was operating,

all of which was known to the defendant at the time of the employment of this plaintiff and on the occasion of his injury.

3. Plaintiff, on 19 May, 1914, was, and for some time prior thereto had been, in the employ of the defendant, Tate Furniture Company, and on said date was engaged in the regular performance of his duties, in the operation of a sanding machine, which required him to sand or dress, by having the sand belt pass over and upon pieces of plank ordinarily known as "head-board" or "foot-board" panels for beds, they being about twenty-two (22) inches in width and four (4) feet in length, and one-fourth to one-half inch in thickness.

4. The sanding machine, if fully and properly equipped, consisted in part of two pulleys, one at either end of the machine, which are about six feet apart, and have under them the necessary supports, and over and around these pulleys passes a sand belt, or sanded belt, on horizontal lines, at approximately five hundred revolutions per minute. The belt is made of heavy canvas, smooth on one side, and sanded on the other side. Under the upper side of the belt, as it revolves around the pulleys, there is a table about six feet in length and eighteen or twenty inches in width, having a number of slats, with small or narrow spaces between them.

5. In sanding lumber or timber upon this machine it is necessary to lay the board upon the table, with the face to be dressed upwards and approximately within one inch of the sand belt. That in order to bring the belt and the timber in touch with each other, and to produce the necessary friction for dressing or sanding the board, the plaintiff was using on the occasion in question, as was usual and necessary and as required by defendant, a block weighing some eight pounds, which the plaintiff placed upon the top of the sand belt, and with his right hand and arm pressed the same down upon said belt, at the same time giving it a forward and backward movement, thus bringing the belt in contact with the timber for the full length thereof, and in this way the plank was sanded or dressed.

6. A sander, of the character just hereinbefore described, when complete, has an iron cleat across the table, with bolts passing through it and also through the slots or spaces between the strips of the table and fastening on the underside thereof, this being made stationary, subject, however, to be moved and adjusted to suit the length and character of the timber being dressed or sanded. One edge of the cleat or strip of iron fastened across the table is finished with teeth somewhat like a saw.

7. In operating the machine the plank is placed upon the table with one end against the cleat, and with such force as to imbed the teeth of the cleat into it, and thereby secure it so as to prevent it from being drawn by force of the friction with the sand belt, while the latter is in motion over the pulleys.

8. The cleat, or piece of iron above described, is, and was at that time, a necessary part of the sander, and was then and theretofore known, approved, and in general use, though plaintiff was ignorant of the fact at that time, and does, in fact, make the operation of the machine safe to the operator; and no sander of the character described is complete or safe without the metal cleat.

9. The sanding machine of the defendant, which the plaintiff was operating at the time of his injury, had no such cleat or device, but was provided with a thin strip of wood, or timber, nailed to and upon the top of said table in such manner as that the same could be easily removed from time to time without injury to the table.

10. That on the occasion of the injury to the plaintiff, hereinafter more fully described, and in consequence of the absence and lack of said iron cleat constructed and provided as aforesaid, the plank upon which the plaintiff was engaged at work, by force and operation of the sand belt, was driven and hurled upon one of the pulleys of said machine and rebounded with great force, and in the rebound hit the pressing block, then in the plaintiff's hand, and thereby broke both bones in the plaintiff's forearm, whereby he was caused to suffer great pain for many days, and was permanently injured in his said right forearm; such injury having the effect to greatly impair the strength and usefulness of said arm and hand and disable the plaintiff from closing his right hand, all to his great damage.

11. The defendant knew that this machine was not, on the day of the injury, equipped with an iron cleat, as described, but only with a flimsy, weak, and insufficient piece of timber, not secure in character, and not adapted to the use to which it was being put, and that the risk to the plaintiff was increased by reason of the absence of an iron cleat of the character hereinbefore described.

12. The plaintiff was required by the defendant to work at this machine at a time when defendant knew that it was defective and was not equipped with an iron cleat of the character hereinbefore described.

13. On 19 May, 1914, plaintiff was performing his duty in the operation of said machine when defendant required the plaintiff to work upon and sand boards which were more or less warped and twisted, thereby increasing the plaintiff's risk of injury and damage, as the effect of such warping and twisting was to make said timber more difficult to confine to the table of the sander, and especially was it more difficult to do so by reason of the absence of the iron cleat as described, and of all this the defendant had knowledge.

14. It was a positive wrong and negligence on the part of defendant to furnish boards, or material, in any way warped and twisted and to require plaintiff to dress the same, especially on a sand machine so defective as hereinbefore described, all of which tended to and did, in

fact, increase the risk and cause the injury and damage herein described to the plaintiff.

15. The failure of defendant to equip the sander with the iron cleat and to furnish to and require the plaintiff to work upon and dress boards or panels warped and twisted on said machine or sander was negligence on the part of the defendant and a positive wrong to this plaintiff, which caused the injury to him.

The above allegations taken from the complaint are flatly denied by the defendant, in its answer, and the injury to the plaintiff is therein imputed to his own want of proper care in the selection of boards to be dressed or sanded, sound material having been provided for this purpose, with positive instructions to use it only. There was considerable evidence offered by the parties tending to sustain their respective contentions, but we need only refer to it in this manner without setting it out, as brief, but sufficient reference will be made to it in the opinion. There was no objection to the issues which the court submitted to the jury, and upon which they returned the following verdict:

1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff voluntarily assume the risk and danger of being injured in the manner in which he was injured as an incident of his employment? Answer: No.

3. Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer? Answer: No.

4. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $1,500.

*Charles A. Armstrong, King & Kimball for plaintiff.*
*Brooks, Sapp & Williams and Peacock & Dalton for defendant.*

WALKER, J., after stating the case: The general doctrines in the law of negligence have been well settled by the decisions of this Court, and the difficulty lies always in attempting to apply them to a given state of facts. We wish to say of the questions raised in this case, and *in limine,* that their correct solution depends largely upon a thorough understanding of the facts, and a close attention thereto, as the liability of defendant, as we view the pleadings and the evidence, is to be determined more upon how they have been found by the jury than upon the proper apprehension of the general legal principles involved, about which there seems to be very little difference in opinion among the counsel. Before entering upon a consideration of the main questions presented by the exceptions, we would lay out of the case one matter, which is much discussed in the briefs, as to the failure of the defendant to use the metal cleat, which defendant asserts really is the only act of negligence charged

against it, and which defendant also asserts it was not, under the evidence, required to use, as there was no legal proof that it had been approved and in general use, or that it was any safer or more efficient than the wooden cleat, and the evidence being that it was used only for thicker boards, so that, being made of metal and presenting a harder and more unresisting surface to the belt, it would not rub off the sand and injure it. We are of the opinion that this matter has been completely eliminated from the discussion by the following instruction of the court in its charge to the jury: "There is no evidence in this case sufficient to sustain a finding that the metal cleat referred to in the evidence was at the time of the injury complained of in known, approved, and general use on machines like the one complained of, and in arriving at your answer to the first issue, the court charges you that there was no duty upon the defendant to furnish such metal cleat on the machine complained of, and unless you find negligence under some other phase of the case it would be your duty to answer the first issue No." The question then recurs, whether there was any other act of negligence alleged against the defendant, and proof to sustain it, in respect of its duty to furnish its employee with a reasonably safe place, machines, appliances, tools and materials for the performance of his work, which, in this case, is practically a question of fact, if sufficient allegation thereof appears. It is not permissible to allege one act of negligence and prove another, without amendment, and not even then if it materially or substantially changes the cause of action so as to make it, in effect, a new one, for, in the latter case, it would amount to a failure of proof, and not merely to a variance (*Simpson v. Lumber Co.*, 133 N. C., 95), which occurs when, while the pleading and proof do not exactly correspond, the former may be made to do so by amendment in the discretion of the court, and upon such terms as may be just and upon such conditions as will protect the other party against being taken by surprise. Pell's Revisal, secs. 515, 516, and notes. Where the variance is not material, the court may direct the fact to be found according to the evidence, or may order an immediate amendment without costs (Revisal, sec. 516), or where the variance is shown by the party, and found by the court to be material, the opposite party having been misled thereby, with the further fact, as to the respect in which he has been so misled, the court may order the pleading to be amended, upon such terms·as may be just. Revisal, sec. 515. But this case is like that of *Simpson v. Lumber Co., supra,* which has been frequently approved by this Court, as recently as the Spring Term of last year, in *Steeley v. Lumber Co.,* 165 N. C., 27. The charge in that case was one for negligently burning the plaintiff's timber, and the particular act of negligence was the use .of an engine having a defective spark-arrester, and the court allowed the complaint to be amended by adding the allegation that the right

of way was foul, being covered with inflammable material, which was held to be proper, because it only added a new act of negligence as contributing to the burning of the timber. We there said in regard to this question:

"It can make no difference with respect to the plaintiff's right to recover whether the burning was caused by a defective engine or by setting on fire combustible material carelessly left by the defendant on the right of way. Amendments which only amplify, or enlarge, the statement in the original complaint are not deemed to introduce a new cause of action, and the original statement of the cause of action may be narrowed, enlarged, or fortified, in varying forms, to meet the different aspects in which the pleader may anticipate its disclosure by the evidence. 1 Enc. Pl. and Pr., 557-562. In suits founded on negligence, allegations of fact tending to establish the same general acts of negligence may properly be added by amendment. 1 Enc. Pl. and Pr., 563; *R. R. v. Kitchin,* 83 Ga., 83. An amendment can be allowed under our law when it does not substantially change the claim or defense (Code, sec. 273), and the statement of the additional grounds of negligence is not a new cause of action or a substantial change of the plaintiff's claim. *Kuhns v. R. R.,* 76 Iowa, 60; *Davis v. Hill,* 43 N. H., 329; *R. R. v. Salmon,* 14 Kan., 512; *Smith v. Bogenschutz* (Ky.), 19 S. W., 667; *Nash v. Adams,* 24 Conn., 33; *Carmichael v. Dollan,* 25 Neb., 335; *R. R. v. Hendrix,* 41 Ind., 49; *Chapman v. Nobleboro,* 76 Me., 427. The amendments allowed in the cases just cited were not unlike the one which was made in this case. In *Smith v. Bogenschutz, supra,* it was held that a complaint which alleged that a certain injury caused by the overflow of molten iron from a ladle in which it was being carried was due to the jostling of the carriers in a narrow passway could be amended so as to allege that the overflow was due to a defect in the ladle, without introducing any different cause of action. We do not see how our case can be distinguished from *Smith v. Bogenschutz,* which was well considered."

In the *Simpson case* the real cause of action was the burning of the timber—that was the gravamen of the action, and it differed not how it was brought about—whether by a defective smokestack or a foul right of way, and the two cases are perfectly analogous, for here the gist of the action is the negligent injury to the plaintiff while the manner of causing it is immaterial, subject, however, to the qualification above stated. We have referred to these matters, as it has been urgently argued that the plaintiff is without any cause of action because he has failed to establish by any admissible proof the single act of negligence upon which he rests his right to damages. If the decision of the case depended upon this one objection, we would not hesitate to allow an amendment of the complaint, corresponding with the

DELIGNY *v.* FURNITURE CO.

proof and the finding of the jury, in this Court, as we are empowered to do. We quote literally the section of the statute relating to this question, and call the special attention of the profession to its liberal and sweeping provisions:

"The Supreme Court shall have power to amend any process, pleading or proceeding, either in form or substance, for the purpose of furthering justice, on such terms as shall be deemed just, at any time before final judgment. Also to amend by making proper parties to any case where the Court may deem it necessary and proper for the purposes of justice, and on such terms as the Court may prescribe. And also, whenever it shall appear necessary for the purpose of justice, to allow and direct the taking of further testimony in any case which may be pending in said Court, under such rules as may be prescribed, or the Court may remand the case to the intent that amendments may be made, further testimony taken or other proceedings had in the court below." Pell's Revisal, sec. 1545, and notes.

The predominant idea of the present code system is to try the cases on their real merits. It is broad in its scope and amply sufficient, as it now is, to administer justice, in every possible case, without regard to form or technical accuracy, and is sufficient, as it is at present, and even without any amendment, to satisfy the most advanced notions of modern pleadings and procedure. But we think that the judge has, by the instruction we have quoted, neutralized, if not entirely cut out, all of the defendant's objections which are based upon its supposed duty to use the metal cleat, and the case need only be further considered upon the other exceptions.

This brings us to the principal exception, whether defendant was guilty of negligence in any other respect, alleged in the complaint. That the plaintiff has alleged other acts of negligence, we entertain no doubt, as it is stated, in the fourteenth section of the complaint, that the defendant did not use the iron cleat, but that, instead, the machine was equipped *only* with a flimsy, weak and insufficient piece of timber, not secure in character, and not adapted to the purpose for which it was being used, and that it increased the ordinary risks in operating the machine. What does all this mean, even if strictly and literally interpreted, but that the defendant has been negligent in another respect than that of failing to use a metal cleat, in that it required plaintiff to use a wooden cleat, which was, of itself, inadequate, even when in its own perfection, and regardless of the omission to use the metal appliance? And the complaint further alleges that, in addition to this second act of negligence, the defendant furnished boards to be dressed by the plaintiff which were bowed and warped, and that this was a contributing cause of the injury. It can make no difference, in passing upon defendant's liability, whether one or all of the acts of negligence in

combination caused the injury, provided any one of them was sufficient for the purpose, as we held in *Knott v. R. R.,* 142 N. C., 238. We must be pardoned for quoting quite liberally from the opinion in that case, because it is so apposite, in answer to most of defendant's contentions in this appeal:

"It does not appear to us, after a careful reading of the complaint and giving it that liberal construction with a view to substantial justice between the parties which is required by the law (Revisal, sec. 495), that the plaintiff has thus restricted himself to proof only of the defect in the spark-arrester and the bad condition of the right of way. It is true, he alleges that the spark-arrester was defective, but in the seventh section of the complaint he states generally that the fire was caused by a spark emitted from the engine, which ignited the combustible material on the right of way and thence spread to his standing timber, which was destroyed. But can it make any difference, in the legal aspect of the case, whether the spark or live coal came from the smokestack or the fire-box, even assuming them to have been in the best condition, if eventually it fell upon the foul right of way and produced the conflagration? We think not, because the permitting its right of way to remain in a dangerous condition was an act of negligence, sufficient of itself to cause the damage and necessarily proximate to it, if the fire immediately, and without any intervening efficient and independent cause, spread to the plaintiff's woods. *Aycock v. R. R.,* 89 N. C., 321; *Phillips v. R. R.,* 138 N. C., 12; *R. R. v. Kellogg,* 94 U. S., 469. If one does an act lawful with respect to the complaining party, and does it in a proper way, the ensuing loss, if there is any, is not, in the legal sense, an injury, but *damnum absque injuria.* If the act is unlawful, or is done negligently, or, in other words, if in doing it he fails to exercise the foresight of a man of ordinary prudence and by reason thereof does not see that some damage will follow, when otherwise he would have discovered it, the wrongdoer is liable for the damage which proximately results. *Drum v. Miller,* 135 N. C., 204; *Jones v. R. R., ante,* 207, and *Hudson v. R. R., ante,* 204. The quality or particular character of the act of negligence is immaterial, so that it is sufficient to produce the injury. The judge, after reciting substantially the allegation of the complaint, charged the jury in this case that before they could bring in a verdict for the plaintiff they must find that the defendant committed the very acts of negligence so set forth by him, that is, that the spark-arrester was defective and the right of way foul, and that by reason of the defect in the spark-arrester a spark was emitted from the engine and fell on the right of way, where it ignited the inflammable material there lying and caused the destruction of the plaintiff's property. So that the jury must have found that the spark-arrester was defective and the right of way foul, as they

gave the plaintiff their verdict. By the charge the testimony as to the fire-box and ash-pan was virtually taken from the jury. There were two acts of carelessness specified by the plaintiff in one part of his complaint, namely, having a defective spark-arrester and keeping a foul right of way; but when he came to allege, in another part, the negligence that caused the injury, he departed from this specific allegation and charged generally that the spark fell from the engine, without describing the particular place from which it was emitted, and that by reason thereof the fire was started on the right of way. In no view of the matter is it material to inquire how it happened to fall from the engine, so that it lighted on the right of way, which was in bad condition, and caused the fire. *Simpson v. R. R.*, 133 N. C., 95; *Troxler v. R. R.*, 74 N. C., 377; *Wise v. R. R.*, 85 Mo., 178."

It must be conceded that it was within the sound, discretionary right of the jury, upon the evidence submitted by the parties, to find that this injury was caused either by a defective cleat or by the warped or bent condition of the boards, and even if there be evidence that the plaintiff had the opportunity to choose among the boards those which were not thus defective, there was also proof that he was guilty of no negligence in this respect, but did the best that he could under the circumstances. We must not bind him to infallibility of judgment, for otherwise the defendant might, itself, fall under the same condemnation. These men, who work at complicated and dangerous machines, when their living depends so much upon their steady and uncomplaining devotion to the daily task assigned to them by their employers, must not be judged by the same unbending and inexorable rules which should apply to those who, being more fortunate and better circumstanced, may come and go at their will and pleasure. They are entitled to fair consideration and treatment proportioned to their ability and opportunity to serve their master faithfully without, at the same time, subjecting themselves to the peril of losing their jobs. Whether the master has been negligent toward his servant, or the latter has carefully or negligently performed his allotted task, depends much upon the situation and surroundings of the parties at the time of the injury; because, before we can determine whether a person has exercised ordinary care, we must first know what the particular circumstances were under which the act alleged to be negligent was performed. The jury must place themselves in his place and consider his surroundings in order to judge him correctly, whether he be master or servant, and so is the law. The doctrine of negligence may be well crystallized and expressed in the words of the golden and unselfish rule, "Whatsoever ye would that men should do to you, do ye even so to them."

We have decided to this effect in numerous cases, and, among the first, is *Marks v. Cotton Mills,* 135 N. C., 287. This case has been

prominently cited as settling this principle, and, recently, in *Lynch v. R. R.,* 164 N. C., 249; *Lloyd v. R. R.,* 166 N. C., 24, 32. Referring to what was decided in *Marks v. Cotton Mills, supra,* we held in the case last above cited, quoting literally the language of that case: "It was the duty of this company to exercise ordinary care in providing a reasonably safe place for him (the employee) to work and reasonably safe tools and appliances with which to perform his task. *Marks v. Cotton Mills,* 135 N. C., 287, where we said: 'The employer does not guarantee the safety of his employees. He is not bound to furnish them an absolutely safe place to work in, but is required simply to use reasonable care and prudence in providing such a place. He is not bound to furnish the best known machinery, implements and appliances, but only such as are reasonably fit and safe and as are in general use. He meets the requirements of the law if, in the selection of machinery and appliances, he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the employer liable, not a mere error of judgment. . . . The rule which calls for the care of the prudent man is in such cases the best and safest one for adoption. It is perfectly just to the employee and not unfair to his employer, and is but the outgrowth of the elementary principle that the employee, with certain statutory exceptions, assumes the ordinary risks and perils of the service in which he is engaged, but not the risk of his employer's negligence. When any injury to him results from one of the ordinary risks or perils of the service it is the misfortune of the employee, and he must bear the loss, it being *damnum absque injuria;* but the employer must take care that ordinary risks and perils of the employment are not increased by reason of any omission on his part to provide for the safety of his employees. To the extent that he fails in this plain duty he must answer in damages to his employee for any injuries the latter may sustain which are proximately caused by his negligence.' Our latest expression on the subject is in *Lynch v. R. R.,* 164 N. C., 249: 'We have said in numerous decisions that the master owes the duty to his servant, which he cannot safely neglect, to furnish him with proper tools and appliances for the performance of his work, and he does not meet fully the requirement of the law in the selection of them unless he uses the degree of care which a person of ordinary prudence would exercise, having regard for his own safety, if he were supplying them for his own use. *Marks v. Cotton Mills,* 135 N. C., 287; *Avery v. Lumber Co.,* 146 N. C., 595; *Mercer v. R. R.,* 154 N. C., 399. The master should, in the exercise of such care, provide reasonably safe tools, appliances and surroundings for his servant while doing the work. *Dorsett v. Mfg. Co.,* 131 N. C., 254; *Witsell v. R. R.,* 120 N. C., 557;

*Orr v. Telegraph Co.,* 132 N. C., 691.' And to these citations may be added, *Pigford v. R. R.,* 160 N. C., 93; *Mincey v. R. R.,* 161 N. C., 467; *Kiger v. Scales Co.,* 162 N. C., 133. In the *Mincey case* we said: 'The duty of the master to provide reasonably safe tools, machinery and place to work does not go to the extent of a guarantee of safety to the employee, but does require that reasonable care and precaution be taken to secure safety; and this obligation, which is positive and primary, cannot be avoided by a delegation of it to others for its performance. The master's duty, though, is discharged if he does exercise reasonable care in furnishing suitable and adequate machinery and apparatus to the servant, with a reasonably safe place and structures in and about which to perform the work, and in keeping and maintaining them in such condition as to afford reasonable protection to the servant against injury. *R. R. v. Herbert,* 116 U. S., 642; *Gardner v. R. R.,* 150 U. S., 349; *R. R. v. Baugh,* 149 U. S., 368; *Steamship Co. v. Merchant,* 133 U. S., 375. This undertaking on the part of the master is implied from the contract of hiring (*Hough v. R. R.,* 100 U. S., 213), and if he fails in the duty of precaution and care he is responsible for an injury caused by a defect which is known to him and is unknown to the servant. *R. R. v. McDade,* 135 N. C., 554."

This covers the entire ground of negligence as presented in this case, so far as the defendant is concerned, and defines its legal duty, and what will constitute a breach of it, with sufficient accuracy. It is also the plain duty of the master to use all machinery, appliances, tools and materials as have been approved and are generally used by those engaged in the same trade or business, which will contribute to the employee's safety, and this rule applies to all reasonable safeguards against injury to his servant. *Witsell v. Railroad Co.,* 120 N. C., 557, 562; *Lloyd v. Hanes,* 126 N. C., 359, 364; *West v. Tanning Co.,* 154 N. C., 47; *Walker v. Mfg. Co.,* 157 N. C., 131, 134; and as a part of this duty of the master in the operation of mills and other plants, where their machinery is more or less complicated, he must use such machinery and implements as are known, approved by the trade and in general use (*Kiger v. Scales Co.,* 162 N. C., 133, 136), but he will not be discharged from liability, if he is otherwise negligent or fails in his duty, even though he may have used those things in his business which are known to have been approved and are in general use. There is also devolved upon the master the duty to inspect in a reasonable and careful manner the machinery and appliances in his plant, for the purpose of discovering any defects likely to injure those in his service. Labatt M. and S., secs. 154, 157; Bailey's Pers. Inj., sec. 2638; *Leak v. R. R.,* 124 N. C., 455; *Womble v. Grocery Co.,* 135 N. C., 474; *Cotton v. R. R.,* 149 N. C., 227. The question at last is, whether the master has failed, in any of the respects showing negligence, to discharge his

duty to his servant.  *Avery v. Lumber Co.,* 146 N. C., 592; *Barkley v. Waste Co.,* 147 N. C., 585, and also *Hudson v. R. R.,* 104 N. C., 491; *Shaw v. Mfg. Co.,* 143 N. C., 131; *R. R. v. Barrett,* 166 U. S., 617.

The charge to the jury in this case was unusually clear and comprehensive.  It defined with fullness and accuracy the law of negligence and proximate cause, as specially applicable to the facts, in the different phases of them, and as the jury might find them to be.  There was nothing omitted, nor overstated, but every possible view of the case was presented with such force and clearness as to leave not the slightest doubt that the jury understood the law.  We do not know what the judge could have said that he did not say with perfect correctness in thought and expression, and with absolute fairness and impartiality to both sides.  It fully deserves the encomium passed upon a similar charge in *Young v. Fiber Co.,* 159 N. C., 375, 382, as being appropriate in every respect.

The Court was right in declining to give the peremptory instructions requested by defendant as to assumption of risk and contributory negligence, as the evidence was conflicting, and different inferences could have been drawn therefrom.  The defendant assumed, of course, all the ordinary risks of the service, according to the original common-law rule, but not those which were caused or added by the master's own negligence, unless they were so obvious and threatening that a man of ordinary prudence would not have continued to work in the presence of them when the chances of danger were greater than those of safety.  *Lloyd v. Hanes,* 126 N. C., 359; *Pressly v. Yarn Mills,* 138 N. C., 410; *Hicks v. Mfg. Co.,* 138 N. C., 319, 327; *Pigford v. R. R.,* 160 N. C., 93; *Britt v. R. R.,* 144 N. C., 256; *Bissell v. Lumber Co.,* 152 N. C., 125; *Pritchett v. R. R.,* 157 N. C., 88; *Lynch v. R. R.,* 164 N. C., 249.

The charge of the court must be construed as an entirety.  We have said that "the appellant is not permitted to select detached portions of the charge, even if in themselves subject to criticism, and assign errors as to them, when, if considered with the other portions thereof, they are readily explained and the charge in its entirety appears to be correct.  Each portion of the charge must be construed with reference to what precedes and follows it.  This rule is so plainly fair and just, both to the judge and the parties, as to have commended itself to the courts, and it is the only reasonable one to adopt.  *S. v. Exum,* 138 N. C., 599; *S. v. Lewis,* 154 N. C., 632."  This statement of the rule is inadvertently said in the plaintiff's brief to be taken from *Ramsay v. R. R.,* 91 N. C., 418, as quoted in *Brazille v. Barytes Co.,* 157 N. C., 454, 460; but it is not in 91 N. C., 418, but in *Kornegay v. R. R.,* 154 N. C., 389, at pp. 392, 393.  When the charge is viewed, as it should be, not textually but contextually, it presents every phase of the case to

the jury in clear and forceful language and utterly precludes the chance of any misunderstanding by the jury. The pleas of assumption of risk and contributory negligence did not rest upon such admitted or undisputed facts, as to present simply matters of law, but upon conflicting proofs and were therefore properly submitted to the jury to settle the contradictions. *Steeley v. Lumber Co.,* 165 N. C., 27. The charge, both upon negligence and those defenses, was as favorable to the defendant as they could have been, without trenching upon the fixed principles of law applicable thereto. Besides, the court gave all of the instructions requested by defendant to which it was entitled.

As to the questions of evidence, we have already practically disposed of those relating to the iron cleat. They have been banned by the charge of the court already quoted. It was competent for plaintiff to show by his own testimony that this machine had performed badly before, as evidence of its defectiveness, *Dorsett v. Mfg. Co.,* 131 N. C., 254; *Pritchett v. R. R.,* 157 N. C., 100; *McCarragher v. Rogers,* 24 N. E. (N. Y.), 330; 4 Labatt M. and S., sec. 1587, p. 4824; 1 Sh. and Redf. on Neg., sec. 60b; *Harrell v. R. R.,* 110 N. C., 215; *Leathers v. Tobacco Co.,* 144 N. C., 339; *Houston B. Co. v. Deal,* 33 So. Rep., 373, and especially in connection with the other testimony of plaintiff, that he had reported it to the company and a promise had been given to repair it.

A question was put to the witness W. L. Hepler, "You immediately notified the insurance company of this accident?" But there was no answer by the witness, and the inquiry stopped when the objection of defendant was made. The question was asked, we presume, to impeach the credibility of the witness, who had just testified in a way that directly conflicted with the evidence offered by the plaintiff. Under the circumstances we cannot see that it did any harm (*Featherstone v. Cotton Mills,* 159 N. C., 429), and especially as defendant seems to have taken the same view of it, for there was no request that the court instruct the jury in regard to it, in order to prevent it having any prejudicial influence. This is not like the case of *Starr v. Oil Co.,* 165 N. C., 587, but more like *Featherstone v. Cotton Mills, supra,* and the other cases which are cited, reviewed and distinguished in *Starr v. Oil Co., supra.* Whenever such questions are asked, if they are irrelevant to the controversy and have a tendency only to prejudice one side or the other, the presiding judge should act promptly in preventing any such result and take drastic measures to do so, if necessary. When either of the parties resorts to such questions to gain an unfair advantage it is done at the sacrifice of the verdict, if he succeeds in securing one, on account of the very dangerous character of the question. But the subject is fully discussed in the cases above cited and needs no further elaboration. In this case, we see no reason for such a course.

But for the objection the witness might have said that defendant had no indemnity insurance. The defendant, if it felt aggrieved by the question, should have prayed for the intervention of the court, and relief, we are sure, would have been speedily granted by the learned presiding judge. Parties should act promptly in the assertion of their rights. This being merely an appellate tribunal, with jurisdiction merely for the correction of errors in law, cannot afford the relief which can be given only by the court below in its sound discretion, unless in very exceptional cases, of which this is not one.

We have given a thorough examination to the record and briefs of counsel and find no error in the trial of the case.