FRANK ELLIOTT v. THE CRANBERRY FURNACE COMPANY.

(Filed 27 December, 1919.)

1. **Employer and Employee—Master and Servant—Safe Place to Work and Approaches.**

   An employer of labor, in the exercise of reasonable care, is required to provide for his employee a safe place in which to do his work, this obligation extending to approaches to it where they are under the employer's control and in the reasonable scope of his duties.

2. **Same—Negligence—Evidence—Injury Reasonably Anticipated—Questions for Jury—Trials.**

   Where the owner of mines, operated upon different levels under a mountain, approached from the outside by tracks leading into tunnels, with a main track from which other tracks branched out, and there is evidence tending to show that after the cars, operated upon the various tracks, had been loaded, they were allowed to run down the slopes by gravity; that the employees in changing shifts had been accustomed to use the tracks as a pathway while going to and returning from work, the remaining pathway along the track having fallen into disuse and being dangerous

with obstructions and pit holes, making the use of the track necessary; that plaintiff, in the course of his employment, had stepped from and back upon the track after allowing several of these cars, running down the slope, to pass, at a place where the light was dim, and was struck and injured by a detached car 15 or 20 feet behind those that had just passed, without light or lookout thereon: *Held*, sufficient upon the question of the defendant's actionable negligence, and as a result that would likely follow from the cars running down the track, under the circumstances, where it knew its employees would pass to and from their work.

3. **Employer and Employee—Master and Servant—Negligence—Contributory Negligence—Railroads—Tramroads—Stepping Upon Track—Look and Listen—Evidence—Questions for Jury—Trials.**

The doctrine that one who has received an injury from passing cars by stepping from a place of safety on to a railroad track, without looking or listening, is guilty of contributory negligence in failing to be properly attentive to his own safety, is not near so insistent where the injured party is on the track in the line of his duty or by license of the railroad company, and the facts and circumstances may so qualify the obligation as to require the question to be submitted to the jury.

4. **Same.**

Where there is evidence of the defendant's actionable negligence in permitting an empty car to run down the slope of its mine, to the plaintiff's injury, as he stepped upon the track, customarily used as a walkway by the defendant's employees, after he had stepped aside, where the light was very dim, at four o'clock in the morning, for several other of these cars to pass, some of them coupled together, the car causing the injury closely following, without light or warning given: *Held*, though the plaintiff could have seen this car had he looked back, and remained in safety, this could not be held for contributory negligence, as a matter of law, under the circumstances of this case, and this question was an open one for the jury.

CIVIL ACTION, tried before *Long, J.*, and a jury, at June Term, 1919, of AVERY.

Plaintiff claimed and offered evidence tending to show that as an employee of defendant company engaged in working in its mines at Cranberry, and while walking along the track of said company, he was knocked down by a car negligently operated by defendant on said track, and seriously injured by the car running over his leg: There was denial of negligence by the company and plea of contributory negligence on the part of plaaintiff. On issues submitted there was judgment for plaintiff, and assessing damages for the injury. Judgment on the verdict, and defendant excepted and appealed.

*J. W. Ragland, V. B. Bowers, and J. J. Hayes for plaintiff.*
*J. H. Epps, J. P. Johnson, F. A. Linney, and Merrimon, Adams & Johnston for defendant.*

HOKE, J. The facts in evidence tended to show that defendant company was mining iron ore at Cranberry, N. C., and, as we understand the testimony, the ore was being taken from the mine at different levels under the mountain and approached from the outside by tracks laid in tunnels, the main track being designated as slope No. 5, and about a quarter of a mile or so from the entrance another track branched off from this, going to a different opening and known as slope No. 3; that in conveying ore from the mine the empty cars were taken in with an engine, and after being loaded they were later allowed to run down the slopes by gravity. That at each opening there were different squads of hands engaged, divided into night and day shifts, and the loaded cars were usually started down the slopes at or soon after the time the respective shifts quit their period of work. That the employees, in coming out from their work, walked down the tracks, this being a smooth, dry way, and had been accustomed to do this for several months past. That there were spaces on either side of the track of 4 to 5 feet, but these were uneven and rocky, and at places there were obstructions or pits or holes, making it necessary to take the track, and the middle of the track, as stated, was the path they all took; that there has been a plank walkway safe and suitable for the hands, but for some reason, on moving the shop or shops of the company on one of the slopes, this walkway had been discontinued, was no longer lighted, and at places it was to some extent obstructed. That there were lights along the track at places, but at the point of the injury the evidence was to the effect that the lights were very dim. That there were usually 40 to 45 hands coming out along the track after the night shifts quit work. That plaintiff was an employee on the night shift on slope No. 3, and on 8 February, 1919, about 4 a.m., the hour when he usually quit work, he and two or three others were walking down the track or standing in the space at the side, at a point not far below where No. 3 slope left No. 5, when 15 to 18 loaded cars rolled by—in a bunch, or so near it as to appear that way—the larger part of them coupled together, and with some car boys on the forward cars. That plaintiff, on the side, was approaching an obstruction or hole, and making it necessary for him to get back on the track or cross it, and as the bunch of cars passed he stepped back on the track and was immediately struck by a detached car 15 or more feet behind the others, and which was without lights or any one on it. The car ran over his leg, causing painful and serious injuries, etc.

It is the fully established principle with us that an employer of labor, in the exercise of reasonable care, is required to provide for his employee a safe place in which to do his work, and our decisions hold that the obligation extends to the approaches to it when they are under the employer's control and in the reasonable scope of this duty. *Kelly v.*

*Power Co.,* 160 N. C., 283; *Myers v. Lumber Co.,* 129 N. C., 252; *Deligny v. Furniture Co.,* 170 N. C., 189; *Kiger v. Scales,* 162 N. C., 133; *Norris v. Cotton Mills,* 154 N. C., 474; *Vaden v. R. R.,* 150 N. C., 700.

Under the conditions presented in the evidence, the defendant company should have provided a safer way, and kept it in proper condition, by which these employees could have gone out from their work, and further, it was a negligent breach of duty and of a pronounced type for defendant to allow a lot of loaded cars, day by day, to be started down this track without lights or adequate control or warning provided at a time when it was known that numbers of its employees would be on this track, and so exposed to very real danger. It was not only probable, but well-nigh certain that serious injury would be the result to one or more of them, and under the principle of the cases cited, and others of like kind, the court committed no error to defendant's prejudice in submitting the issue on the defendant's negligence as an open question to the jury.

And as to the conduct of the plaintiff considered on the issue of contributory negligence, it is the well considered rule that an employee should always be properly attentive to his own safety, and it has been time and again held that when one has stepped on a railroad track, and especially at a time when there is likelihood of a car passing, it will usually amount to contributory negligence as a matter of law, but this is not always nor necessarily true.

An examination of the authorities on the subject will disclose that the principle referred to is not near so insistent where the injured party is on the track in the line of his duty or by license of the company, and in *Sherrill v. R. R.,* 140 N. C., 252, it was said that while one who voluntarily entered on a railroad track without looking or listening, is usually held guilty of contributory negligence, the facts and attendant circumstances may so qualify the obligation as to require the question to be submitted to the jury.

A similar ruling was made at the same term in *Cooper v. R. R.,* 140 N. C., 209, and the position has been again and again approved in our decisions. *Lutterloh v. R. R.,* 172 N. C., 116; *Johnston v. R. R.,* 163 N. C., 431; *Fann v. R. R.,* 155 N. C., 136; *Wolfe v. R. R.,* 154 N. C., 569; *Farris v. R. R.,* 151 N. C., 483.

While plaintiff testifies that if he had looked back he might have seen this car, or if he had remained where he was he would have escaped injury, the facts in evidence also show that plaintiff was not a trespasser in the use of this track, but that it was the usual and practically the only way provided by the company for the hands in going from their work; that at the place of the injury the lights were very dim; that a large bunch of cars, apparently fastened together, had just passed; that

his attention was for the moment distracted and his hearing interfered with by these cars; that the point at which he was standing was near an obstruction or pit, just ahead, which required that he go back upon, or across, the track, and as he did so he was struck by a stray or detached car separated from the others, which approached without any light or person to give warning. Under these, the attendant circumstances, we think that the plaintiff might have reasonably concluded that all the cars that were anywhere near had passed in the first lot, and that under the principles recognized and approved by these authorities, the court was justified in submitting the question of contributory negligence also as an open one to the jury.

On careful examination we find no error in the record, and the judgment for plaintiff is affirmed.

No error.

CLARK, C. J., concurring: Concurs in the opinion of *Mr. Justice Hoke* in every respect. Counsel in this case, as in some others, intimated that juries are too prone to give verdicts against corporations in actions for personal injuries, and counsel on the other side stressed the value of juries.

The right of trial by jury is based upon long experience, and is confirmed as a right in both State and Federal Constitution. Like all human institutions, it is not perfect, but the experience of the ages is that there is no better means of reaching an impartial determination on the facts in dispute than the verdict of twelve good men and true who are summoned from the body of the county, and who, when their duty is done, return whence they came. When there is any serious miscarriage it is not due to the jury system, but to defects in its operation as by not using sufficient care to secure an impartial and intelligent jury by purging the jury box of incompetent or unfit persons, or in other respects. There is little doubt that the verdict of juries on the facts are correct fully as often, if not oftener, than the decisions of the trial judges upon the law. The errors of the latter are supposed to be corrected on an appeal, but there is a speedier method of correcting the errors of the jury, for the presiding judge has the discretion to set aside the verdict if it is palpably contrary to the weight of the evidence, or procured by bias or improper means. The jury for the ascertainment of facts is the democratic feature of our administration of justice. It adds to public confidence in the courts beyond that which obtains in countries where the facts are ascertained by a judge and not by a jury.

On the other hand, the verdicts obtained against corporations in favor of employees are not often due to the bias of juries against corporations. Juries, as a rule, seek to ascertain and determine the merits of the case

submitted to them. They feel that, as a matter of justice, when an employee in a great business has been injured in the scope of his duties the loss sustained should be taxed against the business in which he is engaged, and should not fall upon the family of the employee who has been killed or crippled. And such is general opinion. For this reason the former ruling that an employee could not recover where the negligence of a fellow-servant contributed to the injury has been repealed by statute in this and most other States.

For the same reason, though the negligence of the injured party contributed to his death or injury, both the U. S. statute and that of this State now provide that in cases where the injury occurred in railroad service, contributory negligence shall not be a full defense, but the loss shall be prorated according to the degree of negligence shown by the company and the employee. Furthermore, in many States there are now Employees' Compensation acts determining what amount of compensation shall be allowed in all cases of personal injuries, irrespective of any negligence shown by the injured party. This action of the legislative bodies but ·evinces the general sentiment expressed by juries in their verdicts that the loss sustained by the injury or death of the employee while in the service of the company shall be charged upon the business and not fall wholly upon the family of the unfortunate employee. The world has grown more just in its views as to those who create the wealth of the world and bear the bulk of its burdens while receiving a minimum of recognition.