WILLIE ATKINSON v. CORRIHER MILLS COMPANY.

(Filed 20 May, 1931.)

1. **Master and Servant C b—Duty to provide reasonably safe ingress and egress does not extend to land of another over which employer has no control.**

    The principle requiring an employer to provide his employees a reasonably safe place to work extends to providing them reasonably safe ingress and egress to and from their work, but does not extend to providing such ingress and egress over the lands of a third party over which the employer has no supervision or control.

2. **Same—Held: Evidence disclosed that injury resulted from condition of land under exclusive use and control of another and nonsuit was proper.**

    Evidence that a railroad company had a right of way for a spur track into the defendant's mill, that the right of way was under the exclusive use and control of the railroad company, and that the injury in suit occurred off the defendant's premises when the plaintiff stepped upon soft dirt on the railroad company's right of way as she was leaving her work in the defendant's mill, is held, insufficient to take the case to the jury upon the issue of defendant's negligence, and its motion as of nonsuit should have been sustained.

CIVIL ACTION, before *Moore, J.,* at October Term, 1930, of MECK-LENBURG.

The plaintiff instituted this action against the defendant to recover for personal injury sustained on or about 30 April, 1929. The defendant operates a mill and owns certain residences in which the operatives live. Plaintiff lived in one of these houses. The mill bought a tract of land and erected its mill thereon. The premises occupied by the mill was enclosed by a wire fence. The Southern Railway Company owns a spur track which enters the enclosure of the mill through a gate of said fence. The easement or right of way of the railroad company is 200 feet in width. The spur or switch track branches off from the main line

and runs along the mill building outside the wire fence and near thereto, through the gates of the mill. There was a path near the mill gate extending across the railway track to the home of employees, which had for many years been used by employees in going to and fro from work.

The plaintiff narrates her injury as follows: "After I had completed my work on the night of 30 April, 1929, and was coming out of the mill other people left the mill through the gate at the time I started out. . . . I found the gate open. I came out the gate and started down to this track and about the first step I took with my right foot the ground was soft there; it gave way and I hit the ground. . . . I had to get outside the fence before I could go across that track. . . . I passed out the gate, walked along the track for the length of the gate and then started down from the track. . . . I fell just as I stepped off the first track, that is the spur track. . . . I came out of the mill, walked along the spur track, passed through the gate and walked along the spur track a distance of that gate and then stepped down from the spur track towards the main line of the Southern. That was the direction I was going. I was injured between the spur track and the main line of the Southern Railway. I was not hurt as I stepped off the iron rail. I mean just as I stepped off that bank there. The bank was right even with the cross-ties. The soft ground that I stepped on gave way and then is when I fell. . . . In stepping off the spur track on other soft dirt, which gave way, it is about five or six feet to the level ground. . . . There was a path there. The path is just opposite the gate. It was wide enough to walk down. . . . It looked like it had been used very much. It was a piece of embankment. It was the path that gave way. As I put my foot down there the soft dirt gave way. . . . It is twenty feet from the bottom of that embankment which I spoke of to the first main line track. . . . It was about five o'clock 30 April, 1929. It was kinder between dark and daylight. . . . I have been out that place that I call a path twice a day for seven or eight months. . . . I could see the path. I could see the path, but I did not see all the rough places in it. I knew it was washed out. I knew the path was rough. I couldn't notice all the details in it that morning. I looked for them as best I could. The thing that made me fall was the soft dirt gave way."

There was uncontradicted evidence that the spur track was installed by the railway company and under its control, and that the defendant never assumed any maintenance or control over the path crossing the railway tracks.

The evidence tended to show that the plaintiff has sustained a permanent injury.

Issues of negligence, contributory negligence and damages were sub-
mitted to the jury and answered in favor of plaintiff. The verdict
awarded a recovery of $2,200.

From judgment upon the verdict the defendant appealed.

*E. A. Hilker and H. L. Taylor for plaintiff.*
*J. Laurence Jones and W. C. Davis for defendant.*

BROGDEN, J. Is an employer liable for the injury of an employee sus-
tained upon the premises of a third party while returning home from
work, and using a frequented path across the property of such third
party?

The defendant owned the land over which the Southern Railway
had an easement of 200 feet in width. The right of way, at the time
of the injury, was used exclusively for railroad purposes and the spur
track entering the enclosure of the mill was installed by the railway
company and subject to its exclusive control. The plaintiff used this
spur track in returning to her home after working hours and in attempt-
ing to follow a path down the embankment of the spur track, the soft
earth gave way and she was thrown and injured.

The duty of an employer to exercise ordinary care in providing proper
approaches to the place of work and proper facilities for ingress and
egress has been frequently considered by the various courts of the
country. This Court has recognized and defined the duty in several
cases, notably: *Elliott v. Furnace Co.,* 179 N. C., 142, and *Bennett v.
Powers,* 192 N. C., 599. The *Elliott case* stated the proposition in these
words: "It is the fully established principle with us that an employer
of labor, in the exercise of reasonable care, is required to provide for
his employee a safe place in which to do his work, and our decisions
hold that the obligation extends to the approaches to it when they are
under the employer's control and in the reasonable scope of this duty."
The *Bennett case* states the proposition in the following language: "The
rule that it is the employer's duty to use ordinary care to furnish his
employee with a reasonably safe place for his work, is not restricted to
the identical situs of the labor, but extends to the exercise of ordinary
care to see that the means of egress and ingress provided by the em-
ployer or customarily used by the employee in going to and from his
work on the premises of the master, and that the ways so provided or so
used in passing from one part of the premises to another, in the course
of his employment, are reasonably safe." See, also, *Kelly v. Power Co.,*
160 N. C., 283.

The foregoing cases, however, involve injuries sustained by employees
upon the premises used and controlled by the employer, and hence do
not present the exact question of law involved in this appeal. The

general aspect of the rule of law pertinent to the facts in the case at bar was discussed and applied by *Connor, J.,* in *Crawford v. Michael-Bivens, Inc.,* 199 N. C., 224. The opinion says: "The general rule of the law imposing upon the defendant this duty was not applicable, however, in the instant case, while plaintiff was at work, temporarily, on the premises of the New Way Laundry, for the reason that the place at which plaintiff was required to work was not under the control of said defendant." That is to say, that ordinarily the ownership, use, and control of the premises is the usual test of liability. This conclusion is supported by the decisions of many courts of final jurisdiction, to wit: Connecticut, Tennessee, Alabama, Kentucky, Massachusetts, Minnesota, Michigan, Pennsylvania, West Virginia; *Channon v. Sanford Co.,* 40 Atlantic, 462; *Cash v. Casey-Hedges Co.,* 201 S. W., 347; *Seminole Graphite Co. v. Thomas,* 87 Southern, 366; *Gillespie's, Ex'rs., v. Howard,* 294 S. W., 154; *Hughes v. Malden & Melrose Gaslight Co.,* 47 N. E., 125; *Lingren v. Williams Bros. Boiler Co.,* 127 N. W., 626; *Penner v. Vinton,* 104 N. W., 385; *Israel v. Lit Bros.,* 94 Atlantic, 136; *Wilson v. Valley Improvement Co.,* 73 S. E., 64. The general principle was tersely expressed in the headnote of an opinion written by *Justice Holmes* in the *Hughes case, supra,* "where the servant was injured by the caving in of a trench neither dug nor controlled by the master, evidence that the servant made no examination, but relied on the master for his safety is immaterial." Some of the courts have recognized and applied exceptions to the rule, where abnormal conditions prevail or where the menace of the premises of the third party was so open and obvious as to impute notice of impending danger to the employer. This line of exceptions was discussed by the Supreme Court of Tennessee in the case of *Cash v. Casey-Hedges Co., supra.*

Moreover, in the case at bar, no duty of inspecting the path where plaintiff was injured, was imposed upon the defendant by virtue of the fact that the defendant had no use or control over the spur track, the embankment thereto, or the main line track of the railway company. As long as the railway company had the right to use the land for railway purposes and was then in the present use and occupancy of such land for such purpose, the defendant was thereby deprived of control over the premises. Upon the whole record, therefore, the Court is of the opinion that the motion for nonsuit should have been allowed.

Reversed.